By the Court—Robertson, J.
Whatever may have been the relations of the parties to this action, the admissibility of the entries in account books kept under the plaintiff’s charge, affects vitally the validity of the judgment. Putting the case in the most favorable aspect for the .plaintiff, the parties were at most partners, and the admission of such entries is only to be vindicated on the ground that they were in partnership books.
There is no question that the general rule is well enough laid down for ordinary cases, that entries in partnership books, during the continuance of the partnership, are evidence against all the partners. But this is neither an arbitrary rule nor an exception to ordinary rules of evidence. For does the reason of it arise from any suppposed authority given by either partner to the other, to bind him *453 by entries in his own favor, as is apparently intimated by Sir Knight Bruce, L. J., in Lodge v. Prichard, (27 Eng. L. & Eq. R., 474.) That would be equivalent to a man’s making a contract with himself, since no such authority can be delegated by one partner to another to create an indefinite liability by admissions in an account book. The true rule in regard to the admissibility of such entries is to be found in the case of The United States Bank v. Binney, (5 Mason, 188,) where it is laid down by Judge Story, with his usual fullness and clearness. In that case he states that the liabilities of the defendants in the case, as partners, depended qn their “knowledge of the entries. “ Whether they had such knowledge is matter of fact upon “ the whole evidence in the case. The ordinary presumption “is, in cases of partnership that all the partners have “ access to the partnership books, and might know the “ contents thereof. But this is a mere presumption from “ the ordinary course of business, and may be rebutted by “ any circumstances which either positively or presumptively rebut any reference of such access; such, for “instance, as distance of place, or the course of business “ of the particular partnership, and, indeed, any other cir- “ cumslances raising a presumption of non-access.” This doctrine is still further explained in Cameron v. Watson, (10 Richardson Eq., [So. Car.,] 92). Dargan, Ch., says, in that case: “ The admissibility of the books of a copart- “ nership, on questions arising between the partners them- “ selves, is founded on * * the right of each partner “ to have access to the books and to inspect them, and the “ presumption that he has, in fact, inspected them. * * “ His acquiescence amounts to an implied acknowledg- “ ment of a tacit assent to the correctness of the books. “ This is * * analogous to the well settled rule that if “ a creditor presents to a debtor his account as a statement “ of his demand, and the debtor examines it or retains it “ for examination, and makes no objection within a reason- “ able time, it is an admission of the debt.” Upon the same principle, in Hutcheson v. Smith, (5 Ir. Eq., [Exch.,] *454 123,) an item was rejected in partnership books, “ because “they remained altogether under the dominion of the “ defendant, and it did not appear that the plaintiff ever “ saw them.” In Heartt v. Corning, (3 Paige, 572,) Ohafc- ■ cellor Walwobth tacitly acknowledged the same principle, by qualifying the principle that partnership books are prima facie evidence against partners, with the proviso that they had access to them at the time or immediately after entries were made.
The opposite doctrine to this, is that' entries in partnership books are conclusive evidence against all the partners who had an opportunity to inspect them, or rather from whom they were not actually proved to have been withheld. This makes the legal presumption of actual access conclusive, in the absence of evidence of physical exclu- ' sion. The presumption of acquiescence follows quite easily when knowledge is thus presumed, and there is no evidence of dissent. Absence, incarceration, loss of sight, ignorance of writing or other physical infirmity, must, equally with other' evidence of want of access, be unavailing, since each partner can employ an agent', spy or sentinel to watch over the entries in the books. The doctrine must extend that far. The cases of Simms v. Kirtley, (1 Monr., Ky., 80,) Fletcher v. Pollard, (2 Hen. & Munf., 549, 550,) Caldwell v. Leiber, (7 Paige, 507,) Lodge v. Prichard, (ubi sup.,) and Stoughton v. Lynch, (2 Johns. Ch., 217, 218,) are cited as authority for it. In none of them was evidence offered and rejected of any omission or want of opportunity to examine the books by the parties sought to be charged. So far as the “course of thebusiness” in them can be gathered from the reports, it would seem that every one of the partners were actively engaged in conducting the business in one and the same place, and equally present and attentive, at their place of business, in its management. There seems to have been no question raised as to actual inspection. In Simms v. Kirtley, (ubi sup.,) the admission of the books was put upon the ground of a supposed agreement to appeal to them as evidence, and their being “ kept sub *455 ject to the inspection of both. Fletcher v. Pollard, (ubi sup.,) is to the same effect. Whether, by being subject to inspection, is meant exposure to it, or actual inspection, does not very clearly appear. The ground of an agreement to be bound by such entries is, I think, untenable for reasons before stated, and it renders the fact of access wholly immaterial, as the entry precedes it. In Caldwell v. Leiber, (ubi sup.,) Ch. Walworth laid down merely the general rule, without regard to any qualifications as stated by him in Heartt v. Corning, (ubi sup.) Lodge v. Pritchard simply disposed of the questions as to the admissibility of one partner’s entry against the others. In Stoughton v. Lynch, (ubi siq).,) the controversy was wholly as to dates; the transactions themselves being apparently admitted or proved; the entries in the books, when appearing to be made in regular and orderly succession, were admitted to fix dates merely.
Of course the admissibility of entries in partnership books, in favor of strangers, has nothing to do with this question, as, in such case, all admissions made by one partner, whether orally or in writing, are binding upon the others in reference to partnership affairs. (Walden v. Sherburne, 15 Johns., 409.)
Taking the course of business in this case, and the conduct of the supposed partners as the test, there was enough evidence to overthrow any prima facie presumption of inspection of the books in question by the defendant. He was a dormant partner, (if one at all,) who took no part in conducting the business, except to furnish his. notes, and merely visited the place where the business was conducted, it being in the neighborhood of his own. So little did he interfere, that none of the clerks, but the bookkeeper, knew he had any interest, and even he did not derive his knowledge of that from any inspection of the books by the defendant. Substantially, all the books were under the plaintiff’s dominion, and he had important ones relating to the business not within the defendant’s reach. The purchases and sales were made exclusively by the *456 plaintiff, who was the treasurer of the concern;' he paid all the bills and managed and directed the business in his own name exclusively. There is not a particle of direct or even circumstantial testimony to show that the defendant ever looked at a book. On the contrary, he seems to have acted as if his only interest was to ascertain if enough had been made to satisfy his claim. These circumstances, unexplained and uncontradicted, are conclusive evidence that the defendant never saw an entry in a book. The Referee has not passed upon the effect of such evidence in determining that the entries were admissible. He finds, as a fact, that the books were open to the defendant’s inspection, and on that alone he undoubtedly determined their admissibility as evidence.
Such entries were received in evidence solely because they were in the books. Hone of them were made by the plaintiff, but all by a bookkeeper, who might, for all evidence to the contrary, have been able to state the facts without the entries. They were, therefore, not admissible as independent entries, (Russell v. Hudson River R. R. Co., 17 N. Y. R., 134; Halsey v. Sinsebaugh, 15 N. Y. R., 487,) the witness being present and not showing any defect of memory. Entries of purchases and sales, except the few made by the witness, were clearly not records of his transactions ; and other entries were copies of those made by third persons.
Bor were such entries evidence by reason of having been made by a mutual agent. The bookkeeper may have been a common agent to charge the partnership as regarded third persons, by his entries. To make him a mutual agent, he must have had power to bind each partner to the others by entries in the books. It is well settled that the same person cannot act as agent between two parties, for both, because he cannot consult the interest of both in making a contract. But can a mutual agent be appointed to make admissions, either verbally or by entries in a book, alternately and mutually for or against either of two parties, and for or against the other ? Par *457 ties may employ a common agent to conduct a particular transaction, and agree, as between each other, to be bound by his narration of how he performed it. Such was the case of Peltier v. Sewall, (12 Wend., 386,) wherein a joint adventure was consigned to a foreign factor, who was authorized to make a return of sales, and such return was held to be evidence against both parties. In such case the statement of the common agent becomes mutually binding, not by the joint authority to sell, but by the mutual agreement to take it as binding. In fact, he becomes an umpire, and it is put on that ground in a similar case, (Riche v. Broadfield, 1 Dall., 16.) That he could not bind his principals, after the purpose of his agency was ended by a sale, is clearly shown by Washington, J., in Blight v. Ashley, (Peters’ C. C., 15-21.) A bookkeeper is a simple agent to enter transactions which have actually occurred, and the proof of which must be made out aliunde, not to create evidence of them at his pleasure. The Referee has not found, nor was there evidence to show, that the bookkeeper in question possessed any such authority. Even if he had been authorized to make sales, and enter them, there were entries in the books of purchases and payments not made of his own knowledge, and therefore the books were not, as an entirety, evidence against the defendant. Upon neither ground, therefore, that a mere bookkeeper is a mutual agent selected to determine with what sums each partner shall be charged in the partnership books, or that the person who made the entries in this case had such authority, particularly where it appears he had no knowledge of some of the transactions, were all the entries in the books before mentioned evidence against the defendant.
I think, therefore, that this case should go back for a new trial, for improper admission of evidence alone. But there are some other questions involved which, I think, ought upon such trial to be more fully disposed of than they are in the present report of the Referee.
The rights, of course, of the parties to. this action de *458 pend exclusively upon the nature of the transfer to them by-the Posts of their stock in trade, and the agreement made by and between both the former and latter at the time of such transfer; and such is the view taken by the Beferee. The mere subsequent admissions of the parties as to the nature of their relation to each other, of which evidence is scattered through the case, do- not amount to any modification of such agreement. The Beferee has given us most, if not all, of the terms of such agreement in his report, from materials carefully selected from the testimony, which, in some matters, is slightly conflicting; and his statement of them is undoubtedly sustained by the evidence. He does not, however, find whether there was an express agreement to share in losses as well as profits; and perhaps there is no direct testimony upon that point; that must1 be left to the legal consequences of a contract ■ for joint benefit. It also clearly appears that one of the terms of such agreement was that the business should be carried on for a definite time, viz., one year. By the plaintiff’s testimony it would appear that Varnum, another creditor of the Posts, suggested that if the parties to this-action would make the ■ proposed arrangement to carry on the business of the Posts, he would cash their paper. “ He agreed to advance “money on notes for a year.” The consideration to him was, that'“ the parties to this action should carry on the “ business for a-year, and after paying their debts, and “ all their debts, the profits should go to the creditors of “ the Posts. That was agreed to before the Posts cxe- “ cuted the transfer.” This is corroborated by the testimony of Way, (the bookkeeper,) Charles A. Post, and the defendant himself, and I think has some bearing on the liabilities of the parties to each other and the Posts’ creditors.
The transfer by the Posts to the parties to this action, although absolute on its face, was evidently only part of the agreement between the parties. If part óf the consideration for such transfer was that the parties to this *459 action should carry on the projected trade for a year, with the assistance of Varnum, not only for the purpose of realizing the amounts of . their claims, but also those of all other creditors of the Posts, their obligation to the latter did not cease with any supposed acceptance of the transfer in discharge of their debts. The mere form of that transfer, as being of the absolute ownership of the stock, although it contains the words, “granted, "bargained and sold,” which are recited in the findings as the legal effect of the instrument, is no barrier to our access to the substance of the transaction. Upon the facts in evidence, and the substance of the agreement, as found by the Beferee, no one can, with any show of reason, say that the parties to this action could divide the assigned property on the instant of its transfer, and not move a step in carrying on the business agreed upon, without some responsibility to some one for breach of their agreement. The effect of the transfer and its acceptance was, undoubtedly, to discharge the Posts from all liability to the parties in this action, but they had an interest remaining in having the stock and good-will of their business employed in paying their creditors. .With the exception of the discharge of the original debtors, and the transfer of the legal title of the goods to the parties to this action, for the purposes of the agreement, this case does not differ, essentially, from that of Wheatcraft & ano. v. Hickman, (9 Com. B., 47.) It is true that in that case the debtors had expressly reserved to themselves any surplus after paying their debts, but, with the exception of the active trustees, the debtors were held to ,be the only persons liable for any engagement of such trustees, as being the only persons interested in the profits. Lord Cram worth remarked that “he received the benefits of them as they ‘accrued, although he precluded himself from applying ‘them to any other purpose than the discharge of his ‘debts,” and that the trade was still his. The mere receipt of the money by other creditors, in payment of their debts, was held not to be sufficient to make them *460 liable, and, of course, they were not partners. The powers of partners were declared, in that case, to be a branch of agency, and the trustees had no authority to bind the creditors of the assignor.
If- this be so, as the defendant, unless he was to carry on the business after all the creditors of the Posts were paid, could only realize the amount of his debt in any event, he was not a partner participating in the profits as profits so as to make him liable to third persons. His liability to the plaintiff could, therefore, only arise out of an express agreement to pay one-half the losses in the joint adventure, if it was one. (Pattison v. Blanchard, 5 N. Y. R., 186; Ogden v. Astor, 4 Sandf., 311; Post v. Kimberly 9 Johns., 470; Ross v. Drinker, 2 Hall, 415.)
I think it, therefore, a matter of some doubt whether the agreement in this case, as found by the Beferee, sustained his finding, as a conclusion of law, that the parties in this case, in continuing the business, were partners, or that they -were equally liable for its losses, unless the defendant made some agreement binding himself thereto.
This becomes also important, because the business Avas carried on beyond the first year by the plaintiff, and the defendant had some reason to believe that the business had been profitable during that time. I think, in order to make the defendant liable for losses beyond the period fixed by the agreement, there should have been some evidence and finding as to his entering into a new agreement to charge him with the losses of the continued trade.
This reasoning, of course, is founded upon the supposition that, by the original agreement, the business was to cease when the parties to this action, and the other creditors of the Posts, were paid off, and not to continue for the whole jrear if that happened within it. If the defendant had any interest in carrying it on afterward, he would be, of course, liable as a partner; still, however, his acquiescence and participation in carrying it on the second year must be proved and found.
If the agreement, however, should turn out to be one *461 by which the defendant was merely to lend his notes, to be discounted by Mr. Yarnum, for the benefit of all parties, to be applied by the plaintiff on a mere contract by him to carry on the trade for the purpose of paying off his own, and the defendant’s claim, and all other creditors’ claims, the plaintiff’s right to be reimbursed orie-half of his expenditures would be rendered more doubtful.
The case, however, must go back upon the question of evidence, when all the other questions can be determined.
The judgment should be reversed, and a new trial had, with costs to abide the event. The Beferee to be discharged, if either party desire it.