1. PARTNERSHIP—TRANSFER OF INTEREST—EXISTING DEBTS.
   Where the transfer of a retiring partner's interest to the incoming member is made subject to existing debts of the firm to a certain amount, either member of the new firm has power to execute obligations for the payment of such debts to the amount limited.

2. SAME—FIRM BOOKS—CONSTRUCTIVE KNOWLEDGE OF PARTNERS.
   One who purchases the interest of a retiring partner is liable on a note subsequently executed by the new firm to a bank in renewal of a note of the old firm, where the transactions were entered in the pass book kept between the bank and the firm, to which the new member had access, although he did not know of the note until after the dissolution of the firm.

3. QUESTIONS OF FACT—PROVINCE OF JURY.
   When there is no dispute about the fact in issue, there is no question for the jury.

Action on a note by the Flour City National Bank of Rochester against Charles A. Widener, impleaded with Alfred E. Smith and others. A verdict was directed for plaintiff, and defendant Widener's exceptions were ordered to be heard by this court in the first instance. Defendant moves for a new trial. Overruled.

In the spring of 1890, Alfred E. Smith and L. Frank Petrie became equal partners, under the firm name of Smith & Petrie, and engaged in the business of selling and hanging wall paper, at Rochester, N. Y., and continued therein until May 23, 1894, when Petrie sold his interest in the firm to Charles A. Widener, and on that day a new firm was formed by Alfred E. Smith and Charles A. Widener as equal partners, under the firm name of Alfred E. Smith & Co., for the purpose of continuing the business before carried on by Smith & Petrie. The firm of Alfred E. Smith & Co. continued in business until December 6, 1894, when Widener, by an instrument in writing, sold his interest in the firm to Alfred E. Smith, who on the same day made a general assignment for the benefit of creditors. March 21, 1894, Smith & Petrie made a promissory note by which the firm promised to pay $500 to the plaintiff three months after date, with interest, which note was indorsed by Louis L. Himrod and Carrie B. Himrod, and was discounted by the plaintiff, and the avails thereof credited to Smith & Petrie. Both partners knew about the

note,—one drafted it, and the other procured it to be discounted. The avails were used to pay for goods purchased, and the note became and remained a debt of the firm until June 20, 1894, when it was paid. As before stated, May 26, 1894, while this note was outstanding, Charles A. Widener purchased the interest of L. Frank Petrie in the firm by an instrument in writing executed by both. By this instrument Petrie sold, and Widener purchased, all the interest of Petrie in the firm of Smith & Petrie, including merchandise, cash on hand, and moneys due the firm,—a one-half interest in the entire assets of the firm,—which agreement contained the following provision: "This transfer is made subject to all existing debts and demands due and to become due by said firm, which is hereby covenanted and agreed does not exceed the sum of three thousand dollars." June 20, 1894, Alfred E. Smith executed a new note under the firm name of Alfred E. Smith & Co., by which the firm promised to pay $500 to the plaintiff three months after date, with interest, which note was indorsed by Louis L. Himrod and Carrie B. Himrod, and was discounted by the plaintiff, and the avails thereof credited by the bank to the firm, and entered on the pass book in which the account between the bank and Alfred E. Smith & Co. was kept; and on the same date the amount due on the first-mentioned note ($507.83) was charged on the pass book to Alfred E. Smith & Co., pursuant to the check of that firm. September 26, 1894, the amount due on the last-mentioned note ($501.30) was charged to the account of Alfred E. Smith & Co. by the bank, and entered on their pass book, pursuant to the check of the firm; and on the same day the note in suit was made, by which the firm promised to pay, to the order of Louis L. and Carrie B. Himrod, $500, three months after date, with interest, which note was indorsed by the payees, and was discounted by the plaintiff, and the avails thereof ($500) credited by the bank to Alfred E. Smith & Co., and entered on their pass book. This action is brought to recover on the note last mentioned, and is defended by Charles A. Widener on the ground that it was not given for a firm debt, and that Alfred E. Smith, who executed it, was without authority to bind the firm by this note.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Joseph S. Hunn, for plaintiff.
Horace L. Bennett, for defendant.

FOLLETT, J. The defendant Widener testified on the trial, and in this he was corroborated by Alfred E. Smith, that he (Widener) did not know of the execution of the note in suit, or of the preceding note, until after the dissolution of the firm. The evidence that Widener was without knowledge of the existence of these notes is positive, is not contradicted, and it must be accepted as a fact in this case. However, I do not regard the question of actual knowledge, or of actual notice, of the existence of these notes, as of the slightest legal importance. By the terms of the contract under which Widener· acquired his interest in the firm of Smith & Petrie, it was agreed that the transfer was subject to all existing debts due by said firm, not exceeding the sum of $3,000. To this extent either partner of the new firm of Alfred E. Smith & Co. had power to bind it for the payment of the debts of the former firm. It is not asserted that the new firm ever paid, or assumed to pay, more than the sum of $3,000 on account of the debts of the old firm, and until this limit was passed either partner had full power to pay or to execute obligations, in the usual course of business, for the payment of the debts of the old firm. Again, Widener must be deemed to have had notice of the payment of the note of Smith & Petrie, and of the

execution and discounting of the two notes made by Alfred E. Smith & Co.; for the payment by the new firm of the note of Smith & Petrie was entered on the books kept between the bank and the firm, and the discounting of the two subsequent notes was entered on the pass book, and between the general partners of the firm and its creditors all of the general partners are conclusively deemed to have notice of all the entries made, in the ordinary course of business, on the books of the firm. As between the partners and third persons, this is a conclusive presumption; and the fact that one of the general partners, by his own neglect, failed to learn of the facts entered, does not avail him as against a creditor.

In the case at bar the evidence falls short of showing a misapplication of the firm's funds or of its credit, but, in cases where the property or credit of a firm has been misapplied by one of the partners, the other general partners, as between the firm and its creditors, cannot avail themselves of the fact, provided they might have discovered and prevented the misapplication by the use of ordinary diligence in the business of the firm. In case of a misapplication of credit, the complaining partner must repudiate it, and give notice to the creditor, and not allow him to renew or extend the credit on the faith of the authority of the acting partner. In such cases the complaining partners are charged with constructive notice, which is equivalent, in such cases, to actual notice or knowledge, and they are estopped from asserting, as against the creditors, that the misapplication was not consented to. Lodge v. Prichard, 3 De Gex, M. & G. 906; Ex parte Harris, 2 Ves. & B. 210; Ex parte Yonge, 3 Ves. & B. 31, 36; Ex parte Hinds, 3 De Gex & S. 613; Pol. Partn. (3d. Eng. Ed.) 129. In Taylor v. Herring, 10 Bosw. 447, entries in partnership books were held not evidence for one partner against another on an accounting between them, unless it appears that the complaining partner not only had access to the books, but actually inspected them. From this judgment the learned chief justice dissented, and in the prevailing and dissenting opinions many of the cases relating to this question are referred to and discussed. In Fairchild v. Fairchild, 64 N. Y. 471, it was said "that, as a general rule, where members of a firm have access to its books and opportunity to know how their accounts are kept, such knowledge on their part will be presumed." In Peyser v. Myers, 135 N. Y. 599, 32 N. E. 699, the question arose whether a firm formed by an incoming partner, for the purpose of continuing the business of a former firm, was liable for a debt of the former firm. It appeared that the new firm was formed for the purpose of continuing the business of the old firm, and that the debt in question was carried onto the books of the new firm, and it was held that the debt must be treated as a debt of the new firm, though there was no express agreement by the new firm to pay it. In the case at bar it is conclusively shown that the firm of Alfred E. Smith & Co. was formed for the purpose of continuing the business of Smith & Petrie, and that it did continue that business, and that the note in suit was given in the due prosecution of that business. It also appears that this defendant resided in the city of Rochester, and that, although he took no active part in the

management of the affairs of the firm, he passed by its place of business daily, and might have known, and ought to have known, about the transactions of the firm, which were plainly entered in its books. There is no question of fact in this case. There is no conflict in the evidence, and, such being the case, there was no question for the jury, and it was the duty of the court to direct a verdict for or against the plaintiff. The often-repeated statement that a proposition is a mixed question of law and fact simply means that, if the facts are disputed, the disputed fact in issue must be determined by a jury, and then the law must be decided by the court (Thomp. Trials, § 1031); but, when there is no dispute about the fact in issue, the case presents a question of law for the court, and there is no mixed question of fact and law.

Defendant's motion for a new trial should be denied, and a judgment ordered against him on the verdict, with costs. All concur, except WARD, J., not voting.