SUSAN BURCHELL, Respondent, *v.* HENRY H. VOGHT, Appellant, Impleaded with JOSEPH BORK.

*Partnership — presumption of knowledge of the contents of the firm books — firm account kept in the name of one partner — money borrowed by one partner for use by the firm.*

The presumption that a partner has knowledge of the entries in the firm books is not changed by proof that another partner was permitted to use the books of the firm for his individual business; and where it is conceded that a firm account with the bank was kept in the name of the other partner, and that the checks drawn on that account were signed by him, the firm is as effectually bound by the checks so signed as it would have been had the checks been signed in the firm name and been drawn on a bank account kept in the name of the firm.

Where money has been borrowed by one of the partners for the use of the firm, and has been used by the firm, as appears by entries in the firm books, a partner who has acquiesced therein is bound by the transaction.

GREEN, J., dissented.

APPEAL by the defendant, Henry H. Voght, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 9th day of August, 1897, upon the report of a referee.

The action was brought by the plaintiff, as assignee of John W. Leech, against the defendants as copartners, composing the firm of Bork & Voght, to recover certain moneys alleged to have been loaned to said defendants by the plaintiff's assignor, together with certain moneys alleged to have been collected by the defendants for the plaintiff's assignor, and the price of certain personal property alleged to have been sold to the defendants by the plaintiff's assignor.

The defendant Henry H. Voght interposed an answer alleging that the transactions set out in the complaint were not had with the firm of Bork & Voght, but were had with the defendant Joseph Bork, and that in all such transactions the plaintiff's assignor relied solely upon the credit of the said Joseph Bork.

*Moses Shire,* for the appellant.

*George W. Cothran,* for the respondent.

Follett, J.:

As between Henry H. Voght and the assignor of the plaintiff, Voght is conclusively presumed to have knowledge of the entries in the books of the firm of Bork & Voght. (*Flour City National Bank* v. *Widener*, 24 App. Div. 330, and cases cited.) The fact that Bork was permitted to use the books of the firm for his individual business does not change the rule as between the firm, or the members thereof, and third persons. The moneys advanced by the plaintiff's assignor were loaned by means of checks, entries in respect to which were made in the books of the firm, and they also entered into the bank account of the firm, and the items appeared in the pass books of the firm with the bank, which brings the case within the rule and within the facts of the authority cited. The fact that Bork gave the checks on the German-American Bank, signed by him individually, is of no moment, for the reason that Voght and all the witnesses agree that a firm account with that bank was kept in the name of Joseph Bork, and the checks drawn on that account had to be signed by him. If the firm chose to keep its account in that way, it is as effectually bound by the checks as it would have been in case the checks had been drawn in the name of Bork & Voght on a bank account kept in the name of Bork & Voght. Voght having permitted the business of the firm to be transacted in that way, cannot now be heard to say that the checks are not binding on or evidence against him, because signed by Joseph Bork. This money having been borrowed by one of the partners for the use of the firm, and having been used by the firm, and the evidence of such borrowing and of such use having been entered on the books of the firm and acquiesced in by Henry H. Voght, he is bound by the transactions. (*Baldwin's Bank of Penn Yan* v. *Butler*, 14 N. Y. Supp. 831; *Baldwin's Bank of Penn Yan* v. *Morris*, 17 id. 286; affd., 144 N. Y. 637.)

The judgment should be affirmed, with costs.

All concurred, except Green, J., dissenting.

Green, J. (dissenting):

This action was begun on the 1st day of June, 1896. It was brought to recover moneys alleged to have been loaned and personal property alleged to have been sold by John W. Leech to the

defendants, as copartners, and also for rents alleged to have been collected by the defendants, as such copartners, for said Leech. The claims were assigned by John W. Leech to the plaintiff preceding the commencement of this action. Defendant Bork made default. Defendant Voght interposed an answer denying the allegations of the complaint and alleging that the transactions set forth in the complaint were had with Joseph Bork as an individual and were not copartnership transactions, and that he had no notice of the same, and was not liable therefor.

The action was tried before a referee, who found as facts that the defendants were copartners, doing business under the firm name of Bork & Voght, from about May 1, 1886, to January 1, 1892, at Buffalo, and were actively engaged in carrying on " a general real estate business, buying and selling, and insurance, money broking, buying and selling mortgages; " that, some some time prior to December, 1890, John W. Leech became the assignee of George A. Merchant, for the benefit of his creditors, and as such assignee came into possession of moneys and personal property; that, on or about December 15, 1890, Leech loaned to the defendants $2,000 of the moneys which he had received as such assignee, and on or about December 22, 1890, he loaned and advanced to said defendants, of such moneys, the sum of $750; and, on or about March 9, 1891, he loaned and advanced to said defendants, of said moneys, the sum of $1,200; and, on June 5, 1891, he loaned and advanced to the defendants, of such moneys, the further sum of $1,000; and on June 11, 1891, he loaned and advanced to the said defendants, of said moneys, the further sum of $400; which moneys were received and used in their said business; that, on the day of the making of the loan of $2,000, the defendant Joseph Bork gave to said John W. Leech a check on the German American Bank of Buffalo, signed " Joseph Bork," bearing date December 17, 1890, and made payable to J. W. Leech, assignee, etc., or order, for $2,000; and, on March 9, 1891, the said defendant Joseph Bork gave to the said John W. Leech two checks upon the German American Bank of Buffalo, signed " Joseph Bork," each bearing date March 9, 1891, payable to J. W. Leech, Esq., or order, one for $750, and the other for $1,200, being the amount of the loans made on December 22, 1890, and on March 9, 1891, respec-

tively; and, on June fifth, at the time of the making of the loan of $1,000, defendant Joseph Bork gave to the said John W. Leech a check on the German American Bank of Buffalo, signed "Joseph Bork," bearing date June 5, 1891, payable to J. W. Leech, or order, for $1,000; that none of such checks have been paid, and that they were produced upon the trial by the plaintiff, who tendered the same to the defendants; that, on or about February 20, 1891, the said John W. Leech sold and delivered to the said defendant Joseph Bork one staked wagon, one pair bob sleighs, one cutter, at the agreed price of $127; that he also, in the month of June, 1891, sold and delivered to the said Joseph Bork a steam engine and boiler, at the agreed price of $350; and also, in or about the month of August, 1891, he sold and delivered to the defendant Joseph Bork one Howard hoist, at the agreed price and sum of $130, which sum said defendant agreed to pay for such articles; that the sum of $127, the purchase price of said stake wagon, the sleighs and cutter, has been paid by Joseph Bork; that the sum of $130, the price of the Howard hoist, sold and delivered to the defendant Joseph Bork, has been paid by him; that the sum of $350, the price of the engine and boiler, has been paid by the said Joseph Bork; that, during the time of the existence of such copartnership, the defendants kept a bank account in the German American Bank of Buffalo, in the name of the defendant Henry W. Voght, called "The German American Bank Account, No. 1;" and also an account in said bank in the name of Joseph Bork, called "the German American Account, No. 2;" and also in other banks in said city, bank accounts were kept in the name of "Bork & Voght;" that, during such copartnership, the said Joseph Bork carried on an individual business in real estate, amounting to many thousands of dollars, in which business Voght had no interest; that the bank account No. 2, in the name of Joseph Bork, was the active account of the firm during its existence, and through this account was the larger proportion of the business of said firm transacted during such times, and that the amounts of money received, as aforesaid, upon the checks given to said Joseph Bork by said John W. Leech, as assignee, etc., were deposited in the said German American Bank, to the credit of account No. 2; that, at the time

of the making and delivery of the checks by Joseph Bork to said John W. Leech, the said Bork requested the said Leech not to present the same for payment, to which request the said Leech consented, and, in fact, never presented the same for payment ; that the said defendant Voght did not, during the existence of such copartnership, have any actual knowledge of the execution and delivery of the said checks by his copartner to the said John W. Leech ; that on the books of said firm, however, there was entered a memorandum of the loan of $750 by said John W. Leech ; and as to the item of $2,000 aforesaid, is the entry of the date, December 15, 1890, " cash as charged, $2,000 ; exchanged checks with J. W. Leech, assignee ; " and as to the item of $1,200 the following entry was made of the date of March 9, 1891 : " $1,200, exchanged checks with Leech, debit to cash ; " and as to the item of $1,000, as of the date of June 5, 1891, is the entry : " Charge to cash, exchanged checks with J. W. Leech, $1,000 ; " that the individual business, as well as the copartnership business of said Joseph Bork, went upon the books of said firm ; that, during all the times aforesaid, there was never any balance struck between the copartners, and no accounting has ever been had by them ; that all the transactions aforesaid, relating to the giving and exchanging of checks, were had by and between the said John W. Leech and Joseph Bork, and that no representations were made by said Joseph Bork to said Leech that said loans were made for or required by said firm ; but that said J. W. Leech, at all of said times, knew of the existence of said firm of Bork & Voght, and that such firm was doing a large business and using large sums of money.

The referee further found that, previous to the commencement of this action, John W. Leech assigned to this plaintiff all the claims and demands set forth in the complaint.

The referee further found that there was a balance due from the defendants, for rents collected on the Merchant houses, the sum of $106.95, and that the amount of the loans was the sum of $6,869.85. He further found as a conclusion of law that the plaintiff was entitled to judgment for the amount of such loans and the balance of such rents and ordered judgment accordingly.

In my opinion the finding of the learned referee that the loans were made to the defendants is not supported by the evidence.

The witness Leech, who was acting in a fiduciary capacity for Merchant and his creditors under a general assignment, testified that the moneys which came into his hands as such assignee were "loaned" by him to these defendants; he does not pretend to give any conversation respecting the transaction, but testifies that the entire transaction was with the defendant Bork. It does not appear that he was ever requested to loan the money to the firm, nor is there any evidence on his part showing that such loans were made, saving and excepting the conclusion which he testified to in stating that he *loaned* these moneys to these defendants. This evidence was given under objection and received with the statement from the referee that, unless the other defendant, Voght, was connected with the transaction, the evidence of Leech in that regard should not be considered; the defendant Voght was not so connected, yet the referee must have taken into consideration this conclusion of the witness, for otherwise the evidence is clearly insufficient to support his findings that these moneys were loaned to the defendants. The witness Bork does not testify that the moneys were loaned to the defendants, but that *he received* from Leech in 1890 and 1891 certain sums of money and that the moneys *thus received* were "used in the business" of his firm. That is the extent of the evidence of Mr. Bork concerning the transaction of these alleged loans to the defendants. He does not testify, nor is it pretended by him nor by the plaintiff, that the defendant Voght knew of these transactions, nor is it shown that the firm required the money nor requested the loan of moneys, nor that the moneys received by the defendant Bork from Leech were ever used in the business of the firm, except the bare statement by Bork that they were "used" in the firm business. There is no intimation that this firm was in need of moneys, nor is there any pretense that Joseph Bork, for the firm, or the firm itself, ever borrowed moneys. The evidence discloses that the transactions were clearly between Leech and Bork, and that the loan was made to Joseph Bork individually, and not to his firm. Whenever moneys were paid over by John W. Leech to Mr. Bork and received by him, he gave a check, signed by himself individually, to the order of J. W. Leech, as assignee, representing the amount of moneys so advanced. Mr. Leech knew that these defendants were transacting business under

## 196 BURCHELL *v.* VOGHT.

the firm name of Bork & Voght, and not under the name of Joseph Bork; and yet we find no evidence of surprise or question on the part of Leech that the checks representing the alleged loans to the firm were all signed by Joseph Bork and not by the firm. The record is entirely wanting in any evidence tending to show that, at the time these moneys were loaned, as claimed by Leech, he relied upon the credit of the firm, but all the evidence points irresistibly to the conclusion that the moneys were loaned to Joseph Bork upon his individual credit, and this is not denied by Mr. Leech nor by Mr. Bork.

The evidence concerning the transaction of the sale of the personal property is the same as that of the alleged loan. Mr. Leech testified that the moneys which he claims to have loaned and the property which he claims to have sold to these defendants were alike the property which came into his hands as the assignee of Merchant; and this personal property, he testified, he "sold to the defendants," as he had also testified he "loaned to the defendants" the moneys of the trust estate. He gives no details of the transaction pertaining to the sale of the property, but says that the transactions were all with Joseph Bork, and that he has never been paid therefor. Mr. Bork testified in connection with this transaction that he received from the assignee certain sums of money; that he is not sure about whether he also received from such assignee some articles of personal property, but says, "I think I did, some; what it was I do not recollect." And yet the referee finds that the personal property was sold to Joseph Bork individually, and that he has paid for it; while, practically, upon the same evidence, he finds that the loan of moneys by this assignee was to the firm, and not to Joseph Bork individually. The evidence that the sale of the personal property was to the firm is as cogent and convincing as is the evidence that the moneys were loaned to the firm. Joseph Bork, under the evidence in this case, had as much authority to purchase the personal property for this firm as he had to borrow the moneys aforesaid for the firm; and John W. Leech, under the evidence in this case, might as reasonably charge the value of the personal property to the firm as to charge it with the moneys alleged to have been loaned by him to it.

There was no actual authority given the defendant Bork to bor-

row these moneys. There was no implied authority, as the act done by the one partner was not shown to have been necessary for the carrying on of the partnership business in the ordinary way; and the firm, under such circumstances, could be liable only upon authority to do the act in question being shown to have been conferred or some ratification of it made by the other partner. "What is necessary to carry on the partnership business in the ordinary way is made the test of authority where no actual authority or ratification can be proved. This is conformable to the most recent and carefully considered decisions; but by adopting it the liability of a firm for the acts of its copartners is not so extensive as non-lawyers sometimes imagine. The act of one partner to bind the firm must be *necessary* for the carrying on of its business; if all that can be said of it was that it was convenient, or that it facilitated the transaction of the business of the firm, that is not sufficient in the absence of evidence of sanction by the other partners. Nor, it seems, will necessity itself be sufficient if it be an extraordinary necessity. What is necessary for carrying on the business of the firm, *under ordinary circumstances and in the usual way*, is the test; and, therefore, in a case where the nature of the business was one in which there was no necessity to borrow money to carry it on under ordinary circumstances and in the ordinary manner, the court held the firm not liable for money borrowed by its agent under extraordinary circumstances, although money was absolutely requisite to save the property of the firm from ruin. (See *Hawtayne* v. *Bourne*, 7 M. & W. 595; and see *Ex Parte Chippendale*, 4 De G., M. & G. 19.) [See, also, *Matter of Cunningham*, 36 Ch. D. 532.] This case (*Hawtayne* v. *Bourne*, *supra*) is an authority for saying that a power to do what is usual does not include a power to do what is unusual, however urgent, and although in the case referred to the money was not borrowed by a partner, but by a person who was only an agent of the firm, the decision would, it is apprehended, have been the same if he had been a partner. For notwithstanding the fact that every partner is to a certain extent a principal as well as an agent, the liability of his copartners for his acts can only be established on the ground of agency. As their agent he has no discretion, except within the limits set by them to his authority, and the fact that he is himself as one of the firm, a

principal, does not warrant him in extending those limits, save on his own responsibility." (Lindl. Part. [5th ed.] 126, 127.)

Liability on the part of appellant Voght for the acts of his partner Bork in borrowing this money cannot be established upon the bare fact that entries of these transactions appear upon the books of account of Bork & Voght. These books, it appears, were also the books of account of Bork as an individual. His individual transactions were large and numerous, and were all entered in these books of accounts. If the attention of Voght had been called to these entries, he would have seen that they were exchange of checks with John W. Leech; and if further inquiry had been made, he would have been informed by Mr. Leech that the checks were made and signed by Mr. Bork individually, and were received, as testified by Mr. Leech himself, as receipts for loans.

It is not claimed that the defendant Voght participated in negotiating these loans, or that he had any notification that his partner contemplated borrowing the money, nor that he ever did borrow the money. So far as the record discloses no loans were ever negotiated or needed by this firm. While a large sum of money was yearly expended, large amounts also were constantly being received by the firm; and there is no intimation throughout all the evidence that the firm was ever in a condition where it became necessary to borrow. No evidence was given that any other individual or firm transacting business of the same nature as that transacted by this firm ever made a practice of borrowing money, or that it was necessary to do so in the transaction of such a business in the way in which it was carried on. The nature of the business and the practice of those who carry it on (usage or custom of the trade) must be the test of necessity, which will justify one partner in borrowing money for the transaction of the business in which the partners are engaged. (*Hogarth* v. *Latham & Co.*, 3 Q. B. Div. 643; *Taunton* v. *Royal Ins. Co.*, 2 Hem. & M. 135.)

The power of borrowing money, like every other implied power of a partner, only exists where it is necessary for the transaction of the partnership business in the ordinary way.

In *Farmers' Bank of Missouri* v. *Bayliss* (41 Mo. 287) it was held that where one partner gives his own note for borrowed money, unless he borrowed it for the use of the firm and upon the

firm credit, the other members were not liable on the note, nor for the borrowed money. The money, being used by the partnership only, entitled the partner borrowing it to a credit for the amount in the account between him and his partner.

In *Emly* v. *Lye* (15 East, 7) it was held that, if one partner draws a bill in his own individual name and procures it to be discounted, the party discounting it has no claim upon the other partners, although it proved the money was used for the benefit of the firm by the partner drawing the bill.

In *Ricketts* v. *Bennett* (4 Man., Gr. & S. 686) it was held that one of the several coadventurers in a mine, even if he be the general manager, has not such authority to pledge the credit of the general body for money borrowed for the purposes of the general concern, in the absence of circumstances from which an implied authority could be inferred. (*Hawtayne* v. *Bourne*, 7 M. & W. 595.)

In my opinion, therefore, there being no evidence of express authority in the partner Bork to borrow this money, and no evidence of the usage or custom of this firm, or of others engaged in a similar business to that of the defendants to borrow money, nor evidence of the sanctioning by the partner Voght of the act of his copartner, that the contract was not that of the firm, but of the individual member of the firm, Joseph Bork, and that the defendant Voght is not liable therefor.

The contention of the respondent, however, is, and her chief reliance is upon the evidence of the defendant Bork to the effect that the money thus loaned went into the partnership business. The plaintiff cannot avail herself of this fact (if from the evidence of Bork it may be called a fact), for the reason, as has been shown, the money was loaned by Leech to Bork individually, and upon the individual credit of Bork, and the fact that it went into the copartnership business did not constitute Leech a creditor of the firm of Bork & Voght. (*Jaques* v. *Marquand*, 6 Cow. 497; *Emly* v. *Lye*, 15 East, 7.)

The learned referee justifies his conclusion upon the principle laid down in the case of *Crocker* v. *Colwell* (46 N. Y. 212), and kindred cases. The cases thus relied upon were those where it was sought to charge a dormant partner, and, as was said in the case of *National Bank of Salem* v. *Thomas* (47 N. Y. 19): "It is

probably true that a dormant partner may be charged upon an express contract made by the active and known partners in the name in which the copartnership business is ordinarily done, as well as upon the implied contracts of the firm. In either case the contract is in the name by which the dormant partner is represented, and in which he has authorized business to be transacted for his benefit. A dormant partner is one who takes no part in the business, and whose connection with the business is unknown. Both secrecy and inactivity are implied by the word." So that, if it had been shown that the defendant Voght was not known in the partnership, and if the partnership business in which he was interested had been carried on in the name of Joseph Bork, the case would have been brought within the principle enunciated in those cases upon which the learned referee relied in making his conclusions of law in this case. But the partner Voght was not a dormant partner ; he was actively engaged in the business. The firm name was " Bork & Voght." The business of the firm was transacted under that name. The partnership transactions under the name of Bork & Voght were public, and were known to Leech at the time of his transactions with Joseph Bork, and he had been cognizant for years before these transactions that Bork and Voght were partners, and that the partnership business was being transacted publicly under that firm name.

I have heretofore referred to the fact that when this money was loaned, a check representing the amount so loaned, signed by Joseph Bork individually, was given for the loan, and that there is no intimation in the evidence that Mr. Leech was surprised, or made any question as to why the name of Bork & Voght was not signed to the instrument representing a loan which he now claims was made to the firm. This omission is significant of an intent on his part to rely upon Bork individually, and not upon the copartnership, otherwise he would have insisted upon the firm name being signed to the checks which were given at the time of such loans, and which Leech testified were given and received by him merely for the loans thus made.

I conclude, therefore, that upon the evidence presented the learned referee erred in his conclusion that the defendant was chargeable as a copartner with the defendant Bork for the money alleged to have been loaned by John W. Leech, and I am also of

the opinion that the loans were to Joseph Bork, an individual member of the firm and not to the firm; and that, in making such loans, the lender relied upon the individual credit of Joseph Bork and not upon the firm credit.

As there must necessarily be a new trial, and as the evidence may be changed upon such new trial, I deem it unnecessary to consider the question of the liability of the defendant Voght, upon the claim of plaintiff for rents alleged to have been collected for John W. Leech by these defendants, and upon which the plaintiff alleges there is a balance still unpaid.

The judgment herein should be reversed and a new trial ordered before another referee, with costs to the appellant to abide the event of the action.

Judgment affirmed, with costs.