LASALLE EXTENSION UNIVERSITY, APPELLANT, V. JAMES FOGARTY, APPELLEE.

FILED MARCH 16, 1934. No. 28753.

*Adolph A. Carl* and *M. L. McBride,* for appellant.

*J. W. Marer* and *Eugene B. McArdle, contra.*

Heard before GOOD, EBERLY and DAY, JJ., and BLACK-LEDGE and RYAN, District Judges.

RYAN, District Judge.

This action was commenced in municipal court of the city of. Omaha and was tried on appeal in the district court for Douglas county upon the same pleadings by stipulation. The action is upon a promissory note, alleged to have been signed by the defendant, James Fogarty, for a study course in the school of the appellant, the said note being given for tuition and scholarship. The answer of the defendant denied the execution and delivery of the note and application for scholarship in the correspondence school of the plaintiff, admitted that the defendant did sign a purported application and promissory note, but alleged that the same were wholly null and void by reason of sections 62-1708 and 62-1710, Comp. St. 1929, because

said alleged tuition note did not have printed prominently and legibly in bold type across the face thereof and above the signature thereon the words "negotiable note given for tuition." Defendant included in his answer a cross-petition for damages in the sum of $500, claimed to have been suffered by him on account of a series of damaging, threatening, harassing and malicious letters, notices and warnings, which defendant alleges plaintiff wrote and caused to be mailed to the defendant for the purpose of unlawfully extorting from the defendant the money claimed due in this suit; and defendant alleges that the acts of the plaintiff were done unlawfully, maliciously and in an attempt to extort payment of money from the defendant, and at the time of making said threats plaintiff knew, or should have known, that the note could not legally be collected, and said acts were done for the purpose of harassing, annoying, distressing and worrying the defendant into the payment of the same. Defendant also alleged that the plaintiff wrote letters to his employer and to his neighbors for the same purpose and caused the defendant to seek legal advice for his protection, and that by reason of the same he was humiliated and unable to sleep at night and was unable to do his work properly, and that it caused him to become nervous, and that he suffered much pain and mental anguish on account thereof.

Plaintiff was unable to prove the execution and delivery of the note and at the close of its evidence the trial court sustained the motion of the defendant to dismiss the petition of the plaintiff for the reason that there was no evidence before the court to support its claim. The case proceeded to trial upon the cross-petition of the defendant, without objection. The record shows that the defendant was a man of about thirty-five years of age, employed as a meter deposit clerk at the Nebraska Power Company; that about July 2, 1928, a representative of the plaintiff tried to interest him in one of the plaintiff's correspondence courses; that he was about to go on his vacation and he told the representative that he could not

take the course because he had no money to pay down on it at that time. The representative said to him: "Well, I'll tell you, * * * if you will take and just give me $3 on the application, when you return, if you decide that you want to take the course, you can pay me the other $7, and if you don't want to take the course, I will refund your $3, and your application will not be sent in until you decide one way or the other." The $3 was paid and an application signed. Defendant was absent about two weeks on his vacation. He testified that he did not see the agent of the plaintiff again, and that shortly thereafter he received a set of books from the plaintiff and soon he began receiving collection letters; that in October he wrote plaintiff a letter, explaining his dealings with their agent and stating that he did not consider he had made any contract with them. The collection letters from the plaintiff continued. He had written plaintiff, he thought, at least two letters. These letters are admitted as having been received by plaintiff, but appear to have been destroyed. The plaintiff continued with its course of collection letters. About forty of them are contained in the bill of exceptions. These letters vary from moderate reminders of an unpaid balance to accusations of dishonesty and moral turpitude and threats, and were such as were well calculated to coerce the defendant into payment. Some of them were in lurid envelopes, and in one both the letterhead and envelope bore a facsimile of lightning about to strike someone. One of them read as follows: "Honest men pay their debts. Dishonest men do not pay their debts. You owe us $140. Classify yourself." One of them was a garnishment notice with the name of his employer in the heading of the petition. One was on deep red paper and labeled: "Final notice before legal action." The plaintiff also wrote his employer, the Nebraska Power Company, as well as his neighbors living on either side of him. Defendant testified that the receipt of these letters caused him a great deal of worry and mental pain and anguish; that he worried a great deal

that he might lose his job. The chief clerk at the Nebraska Power Company, who was the defendant's superior, testified as to the receipt of a letter written to him, which he produced and which was received in evidence. This letter purported to set out the transaction between the parties and to threaten garnishment of the defendant's wages. The witness talked with the defendant about it and told him: "Our company wasn't having men working for us who had their salaries garnisheed, and if in case he had anything like that, we would have to do one thing or the other, either pay the bills or have to dismiss him." Defendant's next door neighbor testified as to receiving a letter inquiring about him; she opened it and read it and gave it to the defendant; and testified that she "kidded him about getting a red letter." The letter received by the witness was easily identified as a collection letter and was well adapted to cast discredit upon the defendant. The jury returned a verdict in favor of the defendant on his counterclaim in the sum of $500. Plaintiff's motion for a new trial was overruled and the cause comes to this court on appeal.

Appellant does not seriously contend that there was error in dismissing the plaintiff's petition. The appeal is directed solely toward the recovery on the counterclaim, the contention being that the verdict of the jury is not sustained by the evidence; that damages are not recoverable for mental suffering alone; and that the verdict is excessive.

No decision of this court exactly in point has been cited to us in the briefs, and we are unable to find any. The case of *Kurpgeweit v. Kirby*, 88 Neb. 72, is somewhat analogous, in that it holds that damages are recoverable in certain cases for mental suffering and humiliation, without evidence of any physical injury. The facts in that case are quite lengthy and it would serve no good purpose to detail them here.

However, the supreme court of Iowa passed upon a very similar situation in the case of *Barnett v. Collection Serv-*

*ice Co.*, 214 Ia. 1303. In that case the court held: "Threats to sue and to appeal to plaintiff's employer, made wilfully and intentionally for the purpose of producing mental pain and anguish, in attempting to collect debt, *held* to authorize recovery for mental pain and suffering." (242 N. W. 25.) In that case the appellants had a claim for collection against the appellee and in attempting to collect same wrote a series of letters. The contents of the letters are not set out in the opinion, but in discussing them the court say: "It is frankly conceded by counsel for appellants 'that the form letters sent to the plaintiff (appellee) might have been couched in a little more diplomatic and tender language.' This is undoubtedly true. The letters were coarse, and a jury could readily find that they were vindictive. They contained threats of various kinds as to what the appellants would do in the event that the appellee did not pay said claim. None of these threats had reference to physical violence or injury. The letters contained threats to sue, to appeal directly to appellee's employer, with the assurance that this would be successful and 'we will bother him until he is so disgusted with you that he will throw you out the back door.' And again: 'You will settle in full your account with the above through this office within the next five days or we will tie you up tighter than a drum.' There is also a suggestion that the appellee was as bad as a criminal, and other similar matters." In this case the only damages sought by the appellee were for mental pain, anguish and humiliation, which she claimed to have suffered by reason of receiving the series of letters written by the appellants. She testified by reason of the said letters she became nervous and could not work and could not rest; that she suffered mental pain and anguish; that she cried and was compelled to go to bed. The court said: "The jury could have found that this condition was produced solely by the threats and other language of the letters." The only question raised by the appeal in that case was whether or not the appellee had pleaded and proved a

cause of action. The opinion contains quite an exhaustive discussion of authorities from many jurisdictions and draws the quite well-known distinction between the cases relied upon by the appellants and the facts in that case, which are very similar to the facts in this case. It sums up its conclusions thus:

"The rule seems to be well established that, where the act is wilful or malicious, as distinguished from being merely negligent, recovery may be had for mental pain, though no physical injury results. In such a case the door to recovery should be opened but narrowly and with due caution. A creditor or his agent has a right to urge payment of a just debt and to threaten to resort to proper legal procedure to enforce such payment. In this case the jury could well find that appellants exceeded their legal rights, and that they wilfully and intentionally sought to produce mental pain and anguish in the appellee, and that the natural result of such acts was to produce such mental pain and anguish.

"We are constrained to hold that the appellee pleaded a cause of action and that the evidence was sufficient to sustain the verdict."

In 8 R. C. L. 531, sec. 84, the rule is thus stated: "In cases of wilful and wanton wrongs and those committed with malice and an intention to cause mental distress, damages are, as a general rule, recoverable for mental suffering even without bodily injury, and though no pecuniary damage is alleged or proved."

The distinction seems to be in all of the cases as between an act or series of acts done wilfully and purposely or maliciously and acts which are merely the result of negligence. In this case the plaintiff unquestionably had a right to demand payment of its claim. There was, however, no justification for writing the long series of harassing and threatening letters over a period of nearly two years, as was done in this case. The defendant wrote to them and stated his position fully. These letters were not preserved, but their reception is admitted by the plain-

tiff and their contents testified to by the defendant. Plaintiff knew then that defendant denied liability on the note sued upon and was not justified in writing more than a few ordinary collection letters. Certainly the series of thirty-seven letters written to the defendant, which are preserved in the bill of exceptions, and the letter written to his employer and the two written to his neighbors, and the adoption of pseudo-legal forms, ·was wholly unjustified and inexcusable. No reasonable mind could reach any other conclusion than that they were written designedly and for the purpose of harassing the defendant until he would meet their demands, whether the sum claimed was justly due or not.

The judgment of the district court is

AFFIRMED.