ROBERT NEATON, Appellant, v. LEWIS APPAREL STORES, INC., et al., Respondents.

Third Department, May 10, 1944.

*Glenn A. Frank*, attorney for appellant.

*Wiswall, Walton, Wood & MacAffer*, attorneys (*Carl O. Olson* on the brief), for respondents.

HEFFERNAN, J. This action is for libel. Plaintiff has appealed from an order of the Rensselaer Special Term of the Supreme Court dismissing his complaint, under rule 106 of the Rules of Civil Practice, for failure to state facts sufficient to constitute a cause of action.

After alleging that plaintiff is a resident of Albany County, employed by A. & P. Food Stores; that the corporate defendant

is a domestic corporation and that the individual defendant is its manager, the complaint charges: "4. That on or about September 24, 1941, the defendants maliciously published, concerning the plaintiff, by transmitting the same through the United States mails, to the plaintiff's employer, the A. & P. Food Stores, Broadway, Albany, New York, the following false and defamatory letter:

'THE LEWIS STORE                          AMERICA'S LEADING
                                          CREDIT CLOTHIERS.

                          329 River St.,
                          Troy, N. Y.

                                          September 24, 1941.

A. & P. WAREHOUSE
    Broadway,
        Albany, New York.
                    Re: Robert Neaton      16886
                         $20.96

GENTLEMEN:

We may have to garnishee the wages of one of your employees but before doing so, wish to ask your assistance in trying to liquidate a just debt.

This employee has been given every opportunity to pay the debt in small payments, without results, and as it is against our wishes to garnishee unless forced to do so. We ask you to be good enough to speak to this party if the above balance or installments on same cannot be paid at once. By so doing considerable annoyance and trouble can be avoided, also the employee will save the additional expense involved.

We certainly hope that you will not feel that we are making a collection agency of your firm, but only ask your assistance in the interest of good business and fair treatment. Thanking you, we are

                    Very truly yours,
                          LEWIS APPAREL STORES, INC.,
                                  By R. BIGADI,
                                      Mgr.' "

It is further alleged that the meaning of the quoted letter is that plaintiff did not pay his bills; that he was unworthy of credit and that defendants were the owners of a claim against him which was uncollectible, except by garnishee process; that plaintiff was not indebted to defendants in any amount whatsoever, nor had they secured a judgment against him and that the publication was wholly false with the result that plaintiff's credit was impaired and his financial standing injured.

For the purpose of this review we are bound to assume the truth of the allegations contained in the complaint. The court below has held, and it is the contention of respondents in this court, that because the publication does not affect plaintiff in his business or profession it is not libelous *per se*. This argument does not commend itself to us. "·Any written or printed article is libelous or actionable without alleging special damages if it tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society. (*Bennet* v. *Commercial Advertiser Assn.*, 230 N. Y. 125; *Triggs* v. *Sun Printing & Pub. Assn.*, 179 N. Y. 144.) A publication is libelous *per se* where its tendency is to disgrace the plaintiff, and bring him into ridicule and contempt. (*Morey* v. *Morning Journal Assn.*, 123 N. Y. 207.) " (*Sydney* v. *Macfadden Newspaper Pub. Corp.*, 242 N. Y. 208, 211–212.)

In construing this publication we are not restricted to a literal interpretation of the language used, disassociated from the purpose, intent and consequence that may follow from the thought expressed in the words used. If the publication is made maliciously and for the purpose and with the intent of injuring the plaintiff, and would, in its ordinary meaning and purpose, tend to expose one to public hatred, contempt or ridicule, or deprive him of public confidence or esteem, it is actionable *per se;* that is, if, upon the face of the publication, this would be the usual and ordinary effect upon the minds of other people to whom it comes, it must be presumed that it had that effect — the effect that it usually and ordinarily has upon the mind. It is the thought conveyed to the minds of others by the publication that distills the poison which defames the good name or character of the person assailed.

To publish of one that he is unwilling or refuses to pay his debts conveys the implication intended to be conveyed that the debtor is unworthy of credit. The effect of such a publication would impair the standing of an individual and bring him into disrepute with right thinking people in a community.

The meaning of the language used in the publication before us was not a question of law for the court. If the language is capable of two meanings, one of which would be libelous and actionable and the other not, it is for a jury to say, under all the circumstances surrounding its publication, including extraneous facts admissible in evidence, which of the two meanings

would be attributed to it by those to whom it is addressed or by whom it may be read. (*Washington Post Co.* v. *Chaloner*, 250 U. S. 290.) It is only when the court can say that the publication is not reasonably capable of any defamatory meanings, and cannot reasonably be understood in any defamatory sense, that the court can rule, as matter of law, that the publication is not libelous. (*Fahy* v. *Melrose Free Press, Inc.*, 298 Mass. 267.)

In *Peck* v. *Tribune Co.* (214 U. S. 185) plaintiff sued for libel on the ground that defendant published an advertisement which represented plaintiff as a nurse who praised Duffy's Pure Malt Whiskey. The trial court directed a verdict for defendant, and its action was sustained by the Circuit Court of Appeals (154 F. 330) but reversed by the United States Supreme Court. Speaking for a unanimous court, Mr. Justice HOLMES said: '' The question, then, is whether the publication was a libel. It was held by the Circuit Court of Appeals not to be, or at most to entitle the plaintiff only to nominal damages, no special damage being alleged. It was pointed out that there was no general consensus of opinion that to drink whiskey is wrong or that to be a nurse is discreditable. It might have been added that very possibly giving a certificate and the use of one's portrait in aid of an advertisement would be regarded with irony, or a stronger feeling, only by a few. But it appears to us that such inquiries are beside the point. It may be that the action for libel is of little use, but while it is maintained it should be governed by the general principles of tort. If the advertisement obviously would hurt the plaintiff in the estimation of an important and respectable part of the community, liability is not a question of a majority vote.

'' We know of no decision in which this matter is discussed upon principle. But obviously an unprivileged falsehood need not entail universal hatred to constitute a cause of action. No falsehood is thought about or even known by all the world. No conduct is hated by all. That it will be known by a large number and will lead an appreciable fraction of that number to regard the plaintiff with contempt is enough to do her practical harm. * * * It seems to us impossible to say that the obvious tendency of what is imputed to the plaintiff by this advertisement is not seriously to hurt her standing with a considerable and respectable class in the community. Therefore it was the plaintiff's right to prove her case and go to the jury.''

In *Katapodis* v. *Brooklyn Spectator, Inc.* (287 N. Y. 17) wherein it appeared that a newspaper article recited that the parents of a small boy who had been accidentally killed were in dire financial straits, and, if immediate financial aid was not forthcoming, had no alternative but to let their son be interred " in Potter's Field, burying ground of the homeless, friendless and penniless " the court held that it could not be said as matter of law that such an imputation necessarily did not hurt the plaintiffs. · In writing for the court Judge LOUGH-RAN said: " The false words portrayed them [plaintiffs] as being steeped in poverty to the very lips. We think it is not for us to say that the publication of such a piece of news did not hurt the plaintiffs by tending to deprive them of friendly association with a considerable number of respectable members of their community. We believe it is the right of the plaintiffs to have a jury say whether the false words did, in fact, so defame them."

" Communications are often defamatory because they tend to expose another to hatred, ridicule or contempt. A defamatory communication may tend to disparage another by reflecting unfavorably upon his personal morality or integrity or it may consist of imputations which, while not affecting another's personal reputation, tend to discredit his financial standing in the community, and this is so whether or not the other is engaged in business or industry." (Restatement of the Law, Torts, Vol. III, § 559, Comment b.)

We are also satisfied that under the authority of *Keating* v. *Conviser* (246 N. Y. 632) the complaint states a good cause of action.

With these authorities to guide us we conclude that the language in the publication before us might reasonably be construed by the average reader as a reflection on the character and standing of the plaintiff. Certainly a question for a jury is presented as to the meaning to be attributed to it and consequently the motion to dismiss the complaint should have been denied.

The order and judgment appealed from are reversed on the law, with costs, and the motion to dismiss the complaint is denied, with ten dollars costs, with leave to respondents to answer within twenty days after service of a copy of the order to be entered hereon.

BREWSTER, J. (dissenting). The complaint is in libel. It is founded upon a letter written by defendants to plaintiff's

employer, charging in effect that plaintiff was in arrears in the payment of a single indebtedness. I agree with the Special Term that within the authorities there is nothing in the letter that, as pleaded, may be held to be libelous *per se*. To falsely so write as to a single account does not so expose one to obloquy, ridicule or disgrace or so cause one to be shunned, that general damage may be inferred.

In *Woodruff* v. *Bradstreet Co.* (116 N. Y. 217) cited by the Special Term, the gravamen of the alleged libel was the publication of the recovery of a judgment for money. Such was held not to be libelous *per se*. The court there reasoned (p. 222) that the " * * * recovery of a judgment does not necessarily import conceded default in payment of a debt." And further " It is a matter of frequent observation that controversies, arising apparently out of an honest difference of opinion, go into the courts for determination. Litigation also not infrequently comes from causes in which is involved no personal credit or default. There is nothing in the defendant's report to indicate that the judgment was produced by any cause prejudicial to the credit of the plaintiff, and there is no presumption in that respect upon the subject in aid of the action." While in that case only the rendition of a money judgment was published, and the comment relative the absence of an import of conceded default is somewhat significant, still the weight of authority seems to be that falsely writing of one concerning or charging delinquency in the payment of a debt is not thus libelous, when the alleged debtor is not a merchant or so engaged that financial credit is a necessary factor in his trade or business. Such were the holdings in *Stannard* v. *Wilcox & Gibbs* (118 Md. 151) and cases cited therein; *Windisch-Muhlhauser Brewing Co.* v. *Bacom* (21 Ky. L. Rep. 928); *Harrison* v. *Burger* (212 Ala. 670); *Fry* v. *McCord Bros.* (95 Tenn. 678). The following excerpt from *Nichols* v. *Daily Reporter Co.* (30 Utah 74, 79) seems in point, viz.: " To write and publish of one not a trader or merchant and not of or concerning his business affairs that he is indebted to another, and, though able to pay, has neglected or refused to do so, is that such an impeachment of honesty, or does it import such degradation of morals or character, or expose him to public hatred or ridicule, or tend to disgrace him, as a court can say its publication necessarily must, in fact, or, by a presumption of evidence, occasion damage and pecuniary loss to him, and, therefore, he was relieved from otherwise alleging or proving

any? We think not. We are not saying that such language may not, as a natural and proximate consequence, occasion loss and damage; but the plaintiff, in order to recover, must allege and prove them." Since the complaint in question pleads no special damages and the alleged cause of action is so pleaded that its legal sufficiency must be based upon the matter counted upon being libelous *per se,* I therefore think the Special Term was correct in dismissing it on the motion made therefor.

However, for the reasons next stated, I think it proper to direct a modification of the order and judgment of dismissal by permitting plaintiff, on terms, to plead over or anew. I assume he would need this in order to do that, and that we have power to grant it under section 283 of the Civil Practice Act. Such appears to be an indulgence usually granted. (*Hehmeyer* v. *Harper's Weekly Corporation,* 170 App. Div. 459, 463; *Fagan* v. *New York Evening Journal Publishing Co.,* 129 App. Div. 28, 30; *Ellenborger* v. *Slocum,* 123 N. Y. S. 342.) While the office of an innuendo may not be used to extend the alleged libel beyond its import it may be used " to explain the application of words by connection with such facts and circumstances as are alleged." (*Woodruff* v. *Bradstreet Co., supra,* p. 221.) The defendants' letter characterized plaintiff's obligation as " a just debt " which he had " been given every opportunity to pay * * * in small payments, without results," and it asked assistance from plaintiff's employers " in the interest of * * * fair treatment." · If by the pleading of extrinsic facts and special damages and the legitimate use of an innuendo, any or all of these may serve to state a cause of action, I think plaintiff should have that opportunity. I favor an affirmance of the order and judgment appealed from, with the modification aforesaid, contingent upon plaintiff's payment of costs in the court below and here.

HILL, P. J., and BLISS, J., concur with HEFFERNAN, J.; BREWSTER, J., dissents in opinion in which SCHENCK, J., concurs.

Judgment and order reversed on the law, with costs, and the motion to dismiss the complaint denied, with ten dollars costs, with leave to respondents to answer within twenty days after service of a copy of the order to be entered hereon. [See 268 App. Div. —.]