**VONEYE v. TURNER et al.**

Court of Appeals of Kentucky.

June 15, 1951.

of was an officer, agent and employee of the Aetna Finance Company, a corporation; that on Aug. 10, 1948, James E. Tinsley borrowed from the company $300 evidenced by a note due in monthly installments which plaintiff signed as his surety; that Turner as agent of the company talked over the telephone to the personnel director of plaintiff's employer relative to the delinquency of Tinsley on the note on which plaintiff was surety, and on April 27, 1949, through the United States mail sent to the personnel director this letter:

"Personnel Director
Louisville Medical Depot,
Louisville, Ky.
Dear Sir:

"Am writing you as per our telephone conversation of April 26th in regard to your employee, Charles Vaneye. Mr. Vaneye signed a note here on Aug. 10, 1948, in the amount of $300 for his cousin, Mr. James E. Tinsley. At the time of this writing the balance is $281.84. The account is now five (5) full payments in arrears. As I told you on the phone, I contacted Mr. Vaneye a number of times and he informed me that he definitely was not going to pay. Mr. Tinsley is not working and he has not worked since Jan. 24th. When he does work he is an automobile salesman, and he has had trouble finding a job due to the current used car market.

"Enclosed you will find a self-addressed stamped envelope. Anything you can do for us in this matter will certainly be appreciated."

The petition further averred that the writing and delivery of this letter to plaintiff's employer was for the purpose of coercing payment of the note by plaintiff and of exposing him to public contempt, ridicule, aversion or disgrace, which was an invasion of his right of privacy and caused him to suffer great mental pain, humiliation and mortification for which he should recover $10,000 compensatory and $5,000 punitive damages.

It appears that the doctrine of right of privacy emanated from Judge Cooley's statement (Cooley on Torts, 2nd Ed. p. 29), "Of The Right To Be Let Alone". In

Raymond C. Arny, Louisville, for appellant.

Lawrence S. Grauman, Louisville, Marvin Snyder, Louisville, for appellees.

Alan N. Schneider, Hensley & Logan, Thos. S. Dawson, Kenneth C. Davis, Robert E. Hatton, Thomas J. Wood, James W. Stites, all of Louisville, amici curiæ.

SIMS, Justice.

For convenience we will refer to the parties as they appear in the trial court. A general demurrer was sustained to the petition, which was dismissed when plaintiff declined to further plead, and the sole question presented on this appeal is, did the petition state a cause of action.

The petition averred plaintiff is now and was at all times mentioned therein an employee of the United States Government in the Louisville Medical Depot, and that John M. Turner at all times complained

1890 Samuel D. Warren and Louis D. Brandeis wrote an article in 4 Harvard Law Review 193, expanding Cooley's "Right To Be Let Alone", where evidently Judge Cooley was speaking of the right of freedom from assault, into the right to be free from mental as well as physical attack.

Redress for the invasion of the right of privacy has been recognized so generally in recent years that it no longer may be questioned. Brents v. Morgan, 221 Ky. 765, 299 S.W. 967, 55 A.L.R. 964; Thompson v. Adelberg & Berman, 181 Ky. 487, 205 S.W. 558, 3 A.L.R. 1594; LaSalle Extension University v. Fogarty, 126 Neb. 457, 253 N.W. 424, 91 A.L.R. 1491; Judevine v. Benzies-Montanye Fuel & Warehouse Co., 222 Wis. 512, 269 N.W. 295, 106 A.L.R. 1443; Sidis v. F-R Publishing Corp., 2 Cir., 113 F.2d 806, 138 A.L.R. 15; Cason v. Baskin, 155 Fla. 198, 20 So.2d 243, 168 A.L.R. 430; Continental Optical Co. v. Reed, 119 Ind.App. 643, 86 N.E.2d 306, 14 A.L.R.2d 743. Also see Annotations in 55 A.L.R. 964; 91 A.L.R. 1495; 106 A.L.R. 1453; 138 A.L.R. 46, 91; 168 A.L.R. 462; 14 A.L.R.2d 770. An exhaustive article on the subject appears in 17 Ky. Law Journal pages 85–122.

Many of the invasions of the right of privacy for which recovery has been sought are the result of unwarranted and humiliating methods put in motion by creditors to collect debts. When the method employed is such as to constitute an actionable invasion of one's right of privacy, the truthfulness of the matter disclosed is no defense to the action. To this extent the right to recover for invasion of privacy differs from a right based on libel. Many of the authorities cited in the preceding paragraph support this assertion.

But the right of privacy is not absolute. As was written in one of the several excellent amici curiae briefs filed on the rehearing of this cause: "No individual can live in an ivory tower and at the same time participate in society and expect complete non-interference from other members of the public."

In our leading case on the subject, Brents v. Morgan, 221 Ky. 765, 299 S.W. 967, 969, 55 A.L.R. 964, Judge Logan defined the right of privacy: "it is generally recognized as the right to be let alone, that is, the right of a person to be free from *unwarranted* publicity, or the right to live without *unwarranted* interference by the public about matters with which the public is not necessarily concerned". (Our Italics.) The texts bear out this statement of the rule. In Restatement of the Law of Torts, § 867, p. 398, the actionable invasion is referred to as one which "unreasonably and seriously interferes with another's interest in not having his affairs known * * * to the public". It is defined in 41 Am.Jur. "Privacy" § 2, p. 925 as: "The right of a person to be free from unwarranted publicity, and as a right to live without unwarranted interference by the public in matters with which the public is not necessarily concerned". Section 12, p. 934 of the same text says: "The right of privacy is relative to the customs of the time and place, and it is determined by the norm of the ordinary man".

Let us apply the letter written in this case to the above rule so clearly enunciated in Brents v. Morgan, 221 Ky. 765, 299 S.W. 967, 55 A.L.R. 964, and determine whether or not plaintiff's right of privacy was invaded. The letter informed plaintiff's employer that plaintiff, as surety for his cousin, James E. Tinsley, had signed a $300 note on Aug. 10, 1948; that at the time the letter was written five full payments on the note were in arrears and Tinsley was not employed and plaintiff had informed defendant he was not going to pay the obligation. It ended by enclosing a self-addressed and stamped envelope and saying, "Anything you can do for us in this matter will certainly be appreciated".

The letter did not contain a threat or a coercive word, nor one word of contempt, ridicule, aversion or disgrace. Ordinarily, an employer is interested in the ability and reputation of his employees as to payment of debts, which makes for efficiency in work and saves the employer the annoy-

ance and expense of answering garnishments. So with reason it cannot be said this letter was directed to one who had no interest in or was not concerned with plaintiff's payment of his just and legal obligation. A debtor when he creates an obligation must know that his creditor expects to collect it, and the ordinary man realizes that most employers expect their employees to meet their obligations and that when they fall behind in so doing the employer may be asked to take the matter up with them. Indeed, most debtors would prefer to have their delinquencies referred to their employers in a courteous and inconspicuous manner rather than to have a suit filed against them and their wages garnisheed.

The instant case is strikingly like Patton v. Jacobs, 118 Ind.App. 358, 78 N.E.2d 789, 790 wherein the Court of Appeals of Indiana affirmed the judgment of the trial court which sustained a general demurrer and dismissed the petition. There, two letters were written to Mrs. Patton's employer calling attention to a debt she owed Dr. Jacobs. The second letter said, "Since Mrs. Patton has stated she welcomes a law suit Dr. Jacobs is willing to accommodate her". It enclosed an itemized statement of the account saying it would be "entered as exhibit 'A' if legal action is necessary". The letter closed by asking the employer to again take the matter up with Mrs. Patton and expressed appreciation for anything it might do to persuade her to pay her account.

It will be noted that the letter in the Patton case did threaten suit while in the case now before us the letter did not even intimate that suit would be filed. In affirming the judgment in the Patton case the Court of Appeals of Indiana remarked that an employer has a natural and proper interest in his employee paying her debts, as it saves the employer the annoyance of garnishment proceedings. The court further remarked that the employer has a right to hire only people who pay their debts and may take a reasonable pride in the reputation of employees in this respect, and the employer is not in the category of the general public which can have no legitimate interest in a purely private matter between creditor and debtor.

In Lewis v. Physicians & Dentists Credit Bureau, 27 Wash.2d 267, 177 P.2d 896, 899, a judgment was affirmed which sustained a general demurrer to an action for invasion of right of privacy based upon a telephone call by the creditor to the debtor's employer, saying the employee would be garnisheed if the debt was not paid. It was there written a single telephone call to an employer that an employee owed a bill she would not pay and the creditor intended to garnishee her wages did not constitute "undue" or "oppressive" publicity. The opinion contains this language: "People who do not pay their bills cannot object to some publicity in connection with attempts to collect them; their tendor sensibilities are protected only from 'undue or oppressive publicity.'"

In denying recovery for invasion of right of privacy based on a telegram a creditor sent to the debtor reading, "Must have March payment immediately or legal action", the Court of Appeals of Georgia in Davis v. General Finance & Thrift Corp., 80 Ga.App. 708, 57 S.E.2d 225, 226, said, "the protection afforded by the law to the right of privacy must be restricted to 'ordinary sensibilities' and not to supersensitiveness or agoraphobia".

The case at bar is distinguished from our cases of Brents v. Morgan, 221 Ky. 765, 299 S.W. 967, 968, 55 A.L.R. 964 and Thompson v. Adelberg & Berman, 181 Ky. 487, 205 S.W. 558, 3 A.L.R. 1594. In the Brents case the creditor, a garage owner, caused a notice 5 feet by 8 feet to be placed on his show window reading:

"Notice

"Dr. W. R. Morgan owes an account here of $49.67. And if promises would pay an account this account would have been settled long ago. This account will be advertised as long as it remains unpaid."

It needs no argument to convince anyone that this was a flagrant violation of Dr. Morgan's right of privacy.

In the Thompson case the creditor had numerous yellow placards stuck up on plaintiff's premises reading: " 'Our Collector,' * * * 'was here for payment.' 'We would save you the annoyance of his further calls, if you will pay at the store' ". [181 Ky. 487, 205 S.W. 559.] Then in large capital letters on the placards appeared " 'The Union Clothing Store.' " This placarding of Mrs. Thompson's home with such notices was as much a violation of her right of privacy as the posting of the notice in the garage show window in the Brents case.

Likewise, the instant case is readily distinguished from the foreign cases relied upon by plaintiff, with the possible exception of Neaton v. Lewis Apparel Stores, 267 App.Div. 728, 48 N.Y.S. 492.

In LaSalle Extension University v. Fogarty, 126 Neb. 457, 253 N.W. 424, 425, 91 A.L.R. 1491, the University knew Fogarty denied the debt, yet it wrote him 37 letters and one to his employer and two to his neighbors. Some of these letters were in lurid envelopes and in one, both the letterhead and the envelope bore the facsimile of lightning about to strike someone. One read: "Honest men pay their debts. Dishonest men do not pay their debts. You owe us $140. Classify yourself." Another letter contained a pseudo garnishment notice. It is manifest such tactics were a gross invasion of Fogarty's right of privacy.

In Quina v. Roberts, La.App., 16 So.2d 558, 559, the employer was sent a document entitled "Final Notice Before Suit" prepared in such a way as to mislead the employer into believing it was issued out of some official or legal channel. This was a plain invasion of plaintiff's right of privacy.

In Keating v. Conviser, 246 N.Y. 632, 159 N.E. 680, the creditor wrote the debtor threatening "to make trouble for her" if she did not pay her account. Subsequently, the creditor wrote the debtor's employer calling attention to the account and saying, the only reason credit was extended was because the debtor was his employee, "from each of whom you require a certain standard of honesty". The letter then told the employer if he did not require payment of the debtor, suit would be filed. Patently, this was an attempt to coerce both the debtor and her employer; also, there was a strong implication that the debtor was not an honest person. The Court of Appeals of New York in reversing the trial court held plaintiff's right of privacy had been invaded.

In Neaton v. Lewis Apparel Stores, 267 App.Div. 728, 48 N.Y.S.2d 492, 494, a letter was written by the creditor to the debtor's employer saying the debtor had been given every opportunity to pay the debt in small payments, without results; and that it was against "our wishes to garnishee unless forced to do so". The Court of Appeals of New York held it was not restricted to a literal interpretation of the language used in the letter in construing the publication, but the language should be given its usual and ordinary meaning that may follow from the thought expressed in the words used. "It must be presumed that it had that effect * * * that it usually and ordinarily has upon the mind. It is the thought conveyed to the minds of others by the publication that distills the poison which defames the good name or character of the person assailed". The opinion then said:

"To publish of one that he is unwilling or refuses to pay his debts conveys the implication intended to be conveyed that the debtor is unworthy of credit. The effect of such a publication would impair the standing of an individual and bring him into disrepute with right thinking people in a community.

"The meaning of the language used in the publication before us was not a question of law for the court. If the language is capable of two meanings, one of which would be libelous and actionable and the other not, it is for a jury to say, under all the circumstances surrounding its publication, including extraneous facts admissible in evidence, which of the two meanings would be attributed to it by those to whom it is addressed or by whom it may be read."

The letter in the Neaton opinion differs from the one before us in that there was

not a word in the latter letter which in any way reflected upon the debtor and there is nothing in it which the "usual and ordinary mind" can construe as "impairing the standing of an individual and bring him into disrepute with right thinking people in the community". However, should we be wrong in this conclusion, we are constrained to say the Neaton opinion is in conflict with the Patton case, Patton v. Jacobs, 118 Ind.App. 358, 78 N.E.2d 789, and the Lewis case, Lewis v. Physicians and Dentists Credit Bureau, 27 Wash.2d 267, 177 P.2d 896, which we think present the sounder view and we prefer to follow them rather than the Neaton case, which fails to distinguish between a warranted and an unwarranted invasion of one's right of privacy.

The judgment is affirmed.

CAMMACK, C. J., and MILLIKEN and MOREMEN, JJ., dissenting.