PERRY v. MOSKINS STORES, Inc.

Court of Appeals of Kentucky.

June 20, 1952.

Charles W. Anderson, Jr., Anderson & McAlpin, Harry S. McAlpin, Louisville, for appellant.

Hugo Taustine, Louisville, for appellee.

COMBS, Justice.

The question is whether a postcard which appellant received through the mail consti-

tuted an invasion of his right of privacy. The general problem presented is the extent to which advertising, through the medium of personalized postcards, may constitute an actionable invasion of an individual's right of privacy.

The appellee operates a retail clothing store in Louisville. To promote a sale, the store mailed a series of postcards to prospective customers. These cards, in feminine handwriting, contained the following: "Please call WAbash 1492 and ask for Carolyn." There was no other writing on the card. When the card was delivered to appellant's home he was not there and his wife read it. When he arrived home his wife was upset and anxious to learn the identity of "Carolyn." Appellant dialed the number shown on the card but could not get an answer. Because of his inability to explain "Carolyn", his wife left him. Subsequent inquiry revealed that "Carolyn" was an employee of appellee and that the postcard was an advertising stunt.

Appellant sued for an invasion of his right of privacy, claiming that as a result of the postcard his home was wrecked. He asked for $1,525 in damages. Appellee's demurrer to the petition was sustained.

■ The doctrine of the right of privacy is well-established in this jurisdiction. Voneye v. Turner, 240 S.W.2d 588, and cases cited therein. It is based on the right of an individual to be left alone, to be free from unwarranted publicity, and to live without unwarranted interference by the public in matters with which it is not necessarily concerned. Brents v. Morgan, 221 Ky. 765, 299 S.W. 967, 968, 55 A.L.R. 964; 38 Ky.Law Journal 487, Restatement of Torts, Vol. 4, Sec. 867, p. 398. However, the right is not absolute. Voneye v. Turner, Ky., 240 S.W.2d 588. The rule defining the extent of the right is based on the premise that the standard by which the act is judged is that of a reasonable man. Voneye v. Turner, Ky., 240 S.W.2d 588; 41 Am.Jur., Privacy, Sec. 12, p. 934, Note, 14 A.L.R.2d 758. Since there is no hard and fast definition of the right, each case must turn on its own facts. Gregory v. Bryan-Hunt Co., 295 Ky. 345, 174 S.W.2d 510. Such a rule necessitates a balancing of the interests of the two parties in the litigation, as well as those of the public.

■ There is no Kentucky case directly in point. Appellant relies strongly on the case of Kerby v. Hal Roach Studios, 53 Cal. App.2d 207, 127 P.2d 577, 579. The motion picture studio, for the purpose of advertising a new production, caused 1,000 letters bearing the signature of Marion Kerby to be mailed to men in Los Angeles, California. The letters were written in feminine handwriting on pink stationery and were enclosed in pink envelopes. They were as follows:

"'Dearest:

"'Don't breathe it to a soul, but I'm back in Los Angeles and more curious than ever to see you. Remember how I cut up about a year ago? Well, I'm raring to go again, and believe me I'm in the mood for fun.

"'Let's renew our acquaintanceship and I promise you an evening you won't forget. Meet me in front of Warners Downtown Theatre at 7th and Hill on Thursday. Just look for a girl with a gleam in her eye, a smile on her lips and mischief on her mind!

"'Fondly,

"'Your ectoplasmic playmate,

"'Marion Kerby.'"

Marion Kerby was the name of the chief feminine character in the motion picture being advertised. At the time this letter was sent, Marion Kerby, an actress and concert singer, resided in Los Angeles and her name and address were listed in the Los Angeles telephone directory. However, she had no part in the motion picture and had not authorized the use of her name. Miss Kerby was besieged with phone calls, one from an outraged wife who threatened to shoot her.

In reversing a non-suit, the California court held that Marion Kerby's "right of privacy had been invaded." The contention that the letter was "plainly an advertisement" was rejected. The context of the letter, the feminine handwriting and the pink stationery all negatived this possibility. In short, it apparently was a letter from a former paramour. The court said

that because of this letter Miss Kerby was "plucked from her regular routine of life and thrust before the world * * * as the author of a letter not written by her and of a nature to at least cast doubt on her moral character * * *."

The facts in the Kerby case distinguish it from the present one. The injury to Miss Kerby consisted, in part at least, in the unauthorized use of her name. Furthermore, the words appearing on the postcard do not carry the same import as those of the letter. Although in bad taste, the contents of the card cannot reasonably be construed to have a salacious meaning. It is difficult to believe that a contented wife would have left her husband without any provocation other than the receipt by him of this postcard. It is more difficult to believe that she would remain away for this reason alone, after learning that Carolyn was not in fact her husband's paramour. We are of the opinion that under the rule laid down in the Voneye case the mailing of the postcard did not constitute an invasion of appellant's right of privacy. Modern day advertising techniques have come to be accepted and are in effect a limitation on the individual's right of privacy. Such methods are not actionable so long as they are not unreasonable. It follows that the demurrer to the petition was properly sustained.

Judgment affirmed.