Robert Lee THOMAS, Plaintiff,

v.

GENERAL ELECTRIC COMPANY, Defendant.

Civ. A. No. 4219.

United States District Court
W. D. Kentucky,
at Louisville.

June 21, 1962.

Kenny Grantz, Frockt, Benovitz & Grantz, Louisville, Ky., for plaintiff.

John E. Tarrant, E. F. Schaefer, Jr., Earl S. Wilson, Bullitt, Dawson & Tarrant, Louisville, Ky., for defendant.

SHELBOURNE, District Judge.

September 25, 1961, Robert Lee Thomas filed a complaint in the Jefferson Circuit Court alleging that the defendant, General Electric Company, had taken his picture contrary to his request not to be photographed. The complaint sought damages in the amount of $1.00 and an injunction against defendant's showing, processing, or publishing plaintiff's picture, as well as an injunction prohibiting defendant from taking any pictures of the plaintiff in the future without his express permission.

of citizenship and an amount in controversy in excess of $10,000.00, exclusive of costs and interest. Plaintiff filed a motion to remand the cause to the Jefferson Circuit Court on the ground that the claim for damages is the sum of $1.00 and that the matter in controversy is less than $10,000.00, the requisite jurisdictional amount.

November 22, 1961, this action and a companion case, Local #761, International Union of Electrical, Radio & Machine Workers, AFL–CIO, and N. Kathleen Ramey v. General Electric Company, Civil Action No. 4215, were consolidated for trial to the Court without the intervention of a jury on January 15, 1962, and the motion to remand this action was passed until that time.

Upon stipulation filed of record at the trial on January 15, 1962, Civil Action No. 4215 insofar as it was applicable to plaintiff N. Kathleen Ramey was stricken from the docket. Subsequently, the plaintiff union filed its written motion that it be permitted to dismiss Civil Action No. 4215 without prejudice, to which defendant objected on the grounds that it was entitled to have the action dismissed with prejudice. The motion of the plaintiff union was sustained by the Court and the action was dismissed without prejudice but upon terms, as provided by Rule 41(a) (2) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

From the pleadings filed and the testimony heard at the trial of the case of Robert Lee Thomas v. General Electric Company, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Plaintiff, Robert Lee Thomas is a resident and citizen of Jefferson County, Kentucky.

2. Defendant, General Electric Company, a corporation created and existing under the laws of the State of New York, is a citizen of that state and has its principal place of business there.

3. Plaintiff is, and was at all times involved herein, an employee of General Electric at its Appliance Park, a large manufacturing plant located in Jefferson County, Kentucky, employing several thousand production workers.

4. Since the commencement of its operations at Appliance Park, and for some thirty years at other of its plants, General Electric has engaged in the practice of taking and using motion pictures for the purpose of documenting the layout of equipment and machinery, and the movements of employees while engaged in the performance of their respective jobs. Such pictures are efficient, effective, and economical means of studying methods of production and the individual operations involved therein. They are used as aids in studying and establishing time standards and safe, efficient manufacturing methods and procedures.

5. A method of studying its operations, other than through the use of motion picture photography, would require a material increase in the personnel making such studies and would cost General Electric approximately $90,000.00 a year in additional wages.

6. In August, 1961, General Electric scheduled the taking of motion pictures of the operation upon which plaintiff was engaged. Plaintiff requested that the pictures not be taken but did not disclose any reason other than he felt that the taking of such pictures invaded his right of privacy. Subsequently, General Electric took plaintiff's picture without his consent.

7. General Electric's taking, developing, and using plaintiff's picture was in accord with its established plan and practice herein described. The motion pictures taken of plaintiff are to be used by General Electric only in the study of its operations.

8. To preclude General Electric from taking photographs at scheduled times in the normal course of business would interfere with its system of studying its operations through motion pictures.

### CONCLUSIONS OF LAW

The jurisdictional question of amount in controversy on which plaintiff's motion

to remand is based is extensively discussed in the annotation "Criterion of Jurisdictional Amount to Vest Jurisdiction of Federal Court Where Injunction Is Sought," 30 A.L.R.2d 602, 611:

"Generally, the determination of such amount does not offer any particular difficulty, since in most instances that which the plaintiff seeks to gain and that which the defendant seeks to conserve is identical and easily ascertainable. However, there are certain situations in which the courts have encountered considerable difficulty in regard to the determination of the amount in controversy, and considerable confusion exists when the plaintiff seeks to gain something difficult to define in terms of money or when the value of the matter in controversy is different for plaintiff and defendant. This confusion has been enhanced by the varying concepts adopted by the courts in their attempts to determine the exact nature of the matter in controversy. Of all the cases with which the courts have had to contend, suits for injunction seem to have given the most trouble. The very nature of these cases often makes money valuations both delicate and difficult. The factual situations involved are varied and the viewpoints of plaintiff and defendant as to the issue involved very rarely coincide. It is not, therefore, too surprising that the results reached—particularly in the decisions of the lower federal courts—are inconsistent and confusing."

█ A determination of "the amount in controversy" cannot be made until "the matter in controversy" has been defined. In Smith v. Adams, 130 U.S. 167, 175, 9 S.Ct. 566, 32 L.Ed. 895, Mr. Justice Field defined the matter in controversy as follows:

"By [the] matter in dispute is meant the subject of litigation, the matter upon which the action is brought and issue joined, and in relation to which, if the issue be one of fact, testimony is taken."

Plaintiff brought this suit on the allegation of invasion of privacy. In its answer, defendant admitted taking plaintiff's picture against his request and alleged that such action was an exercise of its inherent right of management and something to which plaintiff must be subjected in the ordinary course of business. Thus, it appears that the matter in controversy here is the supremacy of two conflicting rights—the plaintiff's right to privacy and the defendant's right to photograph its employees in the exercise of one of its managerial rights.

Plaintiff contends that the value of this matter in controversy is $1.00 or, in the alternative, the cost to the defendant to abide by the injunction should it be granted, that is, its out-of-pocket expense in taking plaintiff's picture. Defendant contends that the value is the loss it will sustain if it is prevented from conducting the study of its operations in the accustomed manner.

The valuation of the amount in controversy is discussed in Barron & Holtzoff, Vol. I, pp. 111–113, as follows:

"In injunction actions, the amount in controversy is not the amount which plaintiff might recover at law, but the value of the right to be protected or the extent of the injury to be prevented.

"A problem which arises in the whole area of jurisdictional amount, but which is presented most acutely in the injunction cases, is whether the amount in controversy is the benefit to plaintiff from the injunction or the cost to defendant of complying with it. Dean Armistead M. Dobie, later a judge on the Fourth Circuit, argued very forcefully that the courts should look only to the benefit to the plaintiff, the so-called 'plaintiff viewpoint' rule. There is support for this rule in the language of some decisions. Nevertheless some of the lower courts, relying on a very cryptic remark in an early

Supreme Court decision [Mississippi & Missouri R.R. v. Ward, 1862, 67 U. S. 485, 2 Black 485, 17 L.Ed. 311] continue to hold that the amount in controversy is the value to the plaintiff or the cost to the defendant, whichever is greater."

In Cyclopedia of Federal Procedure, 3d Ed., Vol. I, p. 360, it is stated:

"Unless jurisdiction is, by statute, conferred irrespective of the amount involved, the amount involved in an injunction suit should equal the jurisdictional minimum, and should not be speculative or uncertain. Not infrequently the controversy may be viewed either from the plaintiff's or the defendant's situation in determining the amount involved. Thus, loss to the defendant by being enjoined may be considered where he is asserting a right of value to him which the plaintiff seeks to enjoin him from exercising, as where it is sought to restrain a carrier or utility from carrying into effect a rate increase."

Plaintiff contends that, regardless of the view this Court adopts, the motion to remand should be granted. He argues that from the plaintiff's viewpoint there is no proof that the injunction would have a value to him in excess of $10,000.-00, and that from the defendant's viewpoint the jurisdictional amount is lacking for the reason that the cost to defendant to abide by the injunction sought here would not exceed $10,000.00. It is contended that the jurisdictional minimum would be satisfied only in the event defendant is enjoined from taking pictures of *any* of its employees without their consent and that such an injunction is not sought in this action. Plaintiff states that the jurisdictional minimum could be met here only if the Court considered the collateral effect of a judgment for the plaintiff influencing other employees of defendant to refuse to allow their pictures taken. It is urged that is only through such collateral effect of a judgment that defendant would incur sufficient additional expense made necessary by establishing a new procedure for studying its operations to meet the jurisdictional minimum.

Plaintiff cites in support of his contention the cases of Healy v. Ratta, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248, and Dermody v. Smith, D.C.Ind., 188 F.Supp. 620, which hold that possible future events and speculative damages are not properly considered in the evaluation of the amount in controversy. Other cases to the same effect are collected in 30 A.L.R.2d 644–646.

Defendant contends that it would not be speculation for this Court to find that, should the injunction issue, other employees would systematically refuse to be photographed and thus destroy its procedure for studying operations, which would result in damages in excess of the jurisdictional amount.

The Court of Appeals for the First Circuit recognized the distinction between possible and probable future events and held that probable future damages are a proper element in the computation of the amount in controversy. In Food Fair Stores v. Food Fair, 1 Cir., 177 F.2d 177, 184, the court said:

"It is not accurate to say that a finding of amount in controversy cannot be based upon future or contingent damages. It cannot be based upon a mere possibility of future harm, but it can be upon a present probability of such harm. The distinction to be observed is the familiar one between a probability and a possibility, not between present and future, or certain and contingent. * * * Therefore the finding of a probability of future harm to the plaintiff from the acts of the defendant warrants the ultimate finding of an amount in controversy adequate for federal jurisdiction."

However, this distinction between possible and probable future events is not important to the decision here.

It appears that the so-called "plaintiff viewpoint" rule has been upheld in a

majority of the cases. McNeill v. Southern Railway Co., 202 U.S. 543, 26 S.Ct. 722, 50 L.Ed. 1142; Hunt v. New York Cotton Exchange, 205 U.S. 322, 27 S.Ct. 529, 51 L.Ed. 821; Bitterman v. Louisville & Nashville R.R., 207 U.S. 205, 28 S.Ct. 91, 52 L.Ed. 171; Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co., 239 U.S. 121, 36 S.Ct. 30, 60 L.Ed. 174; Healy v. Ratta, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248; McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135. Additional cases supporting this rule may be found in 30 A.L.R.2d 621–626.

The case of Mississippi & Missouri R. R. v. Ward, 67 U.S. 485, 17 L.Ed. 311, is the only authority from the Supreme Court cited in support of the defendant's viewpoint. In that case the owner of three steamboats contended that a bridge over the Mississippi River was a public nuisance and specially injurious to him as an owner and navigator of steamboats using the river. He brought suit in a federal court to have the alleged nuisance abated. The defendant, owner of the bridge, challenged the court's jurisdiction on the ground that the plaintiff had failed to allege any damages. At page 492 of its opinion, the Supreme Court disposed of the jurisdictional question as follows:

"But the want of a sufficient amount of damage having been sustained to give the Federal Courts jurisdiction, will not defeat the remedy, as the removal of the obstruction is the matter of controversy and the value of the object must govern."

In Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co., 239 U.S. 121, 36 S.Ct. 30, 60 L.Ed. 164, the Supreme Court followed the plaintiff's viewpoint and reversed a district court decision based on the defendant's viewpoint. It will be noted that the Court cited the Ward case in support of its holding which indicates that, although that case is generally considered to uphold the defendant's view, its holding is not in conflict with the plaintiff's view. In the Glenwood case, plaintiff sought to force defendant to remove certain of its wires and poles where they interfered with its own facilities. The district court dismissed the complaint after defendant showed it could remove the wires and poles in question at a cost less than the jurisdictional minimum. At page 126 of its opinion in 239 U.S., at page 32 of 36 S.Ct. reversing the decision of the district court, the Court said:

"The District Court erred in testing the jurisdiction by the amount that it would cost defendant to remove its poles and wires where they conflict or interfere with those of complainant, and replacing them in such a position as to avoid the interference. Complainant sets up a right to maintain and operate its plant and conduct its business free from wrongful interference by defendant. This right is alleged to be of a value in excess of the jurisdictional amount, and at the hearing no question seems to have been made but that it has such value. The relief sought is the protection of that right, now and in the future, and the value of that protection is determinative of the jurisdiction."

In McNeill v. Southern Railway Co., 202 U.S. 543, 558, 26 S.Ct. 722, 50 L. Ed. 1142, the railroad sought to enjoin one of its shippers from suing in state courts for the railroad's non-compliance with an order of the Corporation Commission of North Carolina. In determining the question of requisite jurisdictional amount, the Supreme Court stated:

"(A)lthough the demurrage dispute [involving $146] may have been the origin of the litigation, there is involved in the controversy presented by the bill not only the right to enforce against the railway company the payment of statutory penalties much in excess of two thousand dollars, but also the right of that company to carry on interstate commerce in North Carolina without becoming subject to such

orders and directions of the corporation commission which so directly burdened such commerce as to amount to a regulation thereof. This latter right is alleged in the bill to be of the necessary jurisdictional value, the averment was supported by testimony, and the master and the court below have found such to be the fact. There is no merit in the contention that there is a want of jurisdiction to entertain the writ of error."

In Hunt v. New York Cotton Exchange, 205 U.S. 322, 336, 27 S.Ct. 529, 51 L.Ed. 821, the exchange brought suit to enjoin Hunt from receiving and using quotations of its sales. Hunt contended that there was no evidence that the matter in dispute amounted to $2,-000.00 and, therefore, the trial judge erred when he upheld the court's jurisdiction. The Supreme Court upheld the decision of the trial judge, stating:

"In other words, the object of the suit is to keep the control of the quotations by the Exchange and its protection from the competition of bucket shops or the identity of its business with that of bucket shops. And the right to the quotations was declared, * * *, to be property, and the Exchange may keep them to itself or communicate them to others. The object of this suit is to protect that right. The right, therefore, is the matter in dispute, and its value to the Exchange determines the jurisdiction, not the rate paid by appellant to the Telegraph Company. The value of the right was testified to be much greater than $2,000."

The case of Bitterman v. Louisville & Nashville R. R., 207 U.S. 205, 225, 28 S. Ct. 91, 52 L.Ed. 171, also involves the question of jurisdictional amount. Bitterman, who was enjoined from dealing in certain non-transferable tickets issued by the railroad, contended that the federal court lacked jurisdiction because the railroad had not shown damages in excess of $2,000.00 as a result of his acts.

The Supreme Court determined the jurisdictional amount to be present, saying:

"Besides the substantial character of the jurisdictional averment in the bill is to be tested, not by the mere immediate pecuniary damage resulting from the acts complained of, but by the value of the business to be protected and the rights of property which the complainant sought to have recognized and enforced."

McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 181, 56 S.Ct. 780, 80 L.Ed. 1135, arose from certain regulations enacted by the State of Indiana concerning the purchase of contracts involving retail sales. G.M.A.C. brought suit to restrain the enforcement of the statutory regulations, and the injunction was granted by a district court of three judges. The Supreme Court reversed on the ground that the plaintiff, who assumed the burden of proving jurisdictional amount after the jurisdictional averment was traversed by the answer, had failed to sustain that burden. In discussing the true value of the matter in controversy, the Court said:

"The value or net worth of the business which respondent transacts in Indiana is not involved save to the extent that it may be affected by the incidence of the statutory regulation. The object or right to be protected against unconstitutional interference is the right to be free of that regulation. The value of that right may be measured by the loss, if any, which would follow the enforcement of the rules prescribed. The particular allegations of respondent's bill as to the extent or value of its business throw no light upon that subject. They fail to set forth any facts showing what, if any, curtailment of business and consequent loss the enforcement of the statute would involve. The bill is thus destitute of any appropriate allegation as to jurisdictional amount save the general allegation

that the matter in controversy exceeds $3,000. That allegation was put in issue and the record discloses neither finding nor evidence to sustain it."

■ These Supreme Court cases are cited as authority for the plaintiff's viewpoint. However, it is apparent from the language quoted from the opinions that the value of the matter in controversy is to be tested by its value to the party who has the burden of proving jurisdictional amount. There are other cases which support this view concerning value of the matter in controversy.

In Amelia Milling Co. v. Tennessee Coal, Iron & R. Co., C.C.Ga., 123 F. 811, 813, suit was brought in a state court against a mining company for $1,000.00 (the jurisdictional minimum was then $2,000.00) and to enjoin it from emptying mud or muddy water onto plaintiff's land. The case was removed to federal court by the defendant and plaintiff sought to have it remanded on the ground that an outlay of $300.00 to $500.00 by defendant would be sufficient to correct the items complained of. The court stated:

"On the case as thus presented, it seems clear that the amount involved in this case, without considering at all the question of the right of the defendant to manage and operate its own property as it may deem advisable, exceeds the sum of $2,000. But aside from these affidavits, on the allegations of the bill in connection with the answer already filed, the amount involved is sufficient to warrant the removal of the case. It would seem to be clear that the amount involved cannot be measured solely by the damage suffered by the complainant, nor by the actual moneyed outlay of the defendant in case he should be prevented and regulated in the use of his own property."

Martin v. City Water Co. of Chillicothe, Mo., D.C.Mo., 197 F. 462, 466, involved a state court action removed to federal court in which the plaintiff sought to enjoin defendant from charging certain metered rates. Seeking to remand the action, plaintiff contended that the subject matter of the suit was the amount of water rates charged him, which amount was below the jurisdictional minimum. Defendant argued that the suit involved the question of its right to operate under the franchise given by the city and to control and regulate its own business. Relying on a similar case, Studebaker v. Salina Waterworks Co., D.C.Kan., 195 F. 164, the court concluded:

"I am of opinion that both from the standpoint of the actual amount ultimately involved, and from that of the right claimed by defendant, which is thus essentially attacked, the jurisdiction of this court is established; and, even though the question be regarded a doubtful one, the same conclusion must be reached."

■ When defendant, General Electric Company, filed its petition for removal of this action from the Jefferson Circuit Court it assumed the burden of establishing the jurisdiction of this Court, and for that purpose the defendant would appear to have the same status as the plaintiffs in the Supreme Court cases reviewed here.

In its answer, the defendant alleged affirmatively its right to photograph its employees as a part of a general study of its methods of production and individual operations on the production line to be one of its managerial rights. The value of this right to General Electric Company was testified to be much in excess of $10,000.00 since, if it were deprived of such right, it would incur additional personnel expense amounting to approximately $90,000.00 each year.

■ We are not unmindful of the many admonitions that federal courts are to construe the jurisdictional statutes strictly. However, we conclude that the defendant has sustained the burden of establishing jurisdictional amount although the question is not free from

doubt, as stated in the Martin case, supra. Plaintiff's motion to remand is overruled.

The case was tried and submitted both on plaintiff's motion to remand and on the merits should the motion to remand be denied. The remaining question, therefore, is whether taking the photograph of plaintiff Thomas while at work and in the discharge of his customary duties is a violation of this right of privacy.

In the proposed conclusions of law submitted by plaintiff's counsel on February 3, 1962, it is suggested that the Court find as follows:

"A defendant employer has a right to photograph its employee in the performance of his or her duties to increase the efficiency of its operation or to promote safety, but that this right is inferior to the rights of the employee when said photographing may affect the health, welfare, domestic situation of employee's home life, may make the employee nervous or subject the employee to undue or unfair criticism by his or her fellow employees."

If plaintiff's counsel is correct in this statement, plaintiff's case is without merit because Thomas has not testified that the taking of his photograph while at work has affected his health, welfare, or domestic situation, made him nervous, or subjected him to undue or unfair criticism by his fellow workers.

Plaintiff's counsel relies on the following cases from the Kentucky Court of Appeals: Foster-Milburn Co. v. Chinn, 134 Ky. 424, 120 S.W. 364, 34 L.R.A., N.S., 1137; Douglas v. Stokes, 149 Ky. 506, 149 S.W. 849, 42 L.R.A.,N.S., 386; Brents v. Morgan, 221 Ky. 765, 299 S.W. 967, 55 A.L.R. 964; Rhodes v. Graham, 238 Ky. 225, 37 S.W.2d 46; Voneye v. Turner, et al., Ky., 240 S.W.2d 588; Perry v. Moskins Stores, Inc., Ky., 249 S.W.2d 812. These cases all involve an unwarranted and improper use of photographs in conection with a statement concerning the plaintiff which was defamatory in nature or even libelous.

There is no proof in the case at bar that the photographs of plaintiff Thomas were taken for any purpose other than to be studies in order to increase the efficiency of defendant's operations and to promote the safety of its employees in the discharge of the duties they were employed to perform. No case has been referred to the Court and the Court has found none forbidding an employer to use such means to improve the efficiency of its workers and promote their safety.

The Court concludes that the complaint seeking the injunction and nominal damages should be dismissed and an order to that effect is this day entered.